663 P.2d 287

J. Earl **DUTHIE** and Ernestine D. Duthie, husband and wife, and J. Earl Duthie as Guardian of the Person and Estate of Ernestine D. Duthie; John D. Duthie and Rosemary Duthie, husband and wife, Plaintiffs-Appellants,

v.

**LEWISTON GUN CLUB,** Its President, Alvin A. Connerley; Its Board of Directors, Robert Gregg, Raymond O'Connor, James Clayton and Roger Booth, individually, Defendants-Respondents.

No. 13077.

Supreme Court of Idaho.

March 3, 1983.

Opinion on Denial of Rehearing May 23, 1983.

James W. Givens, Lewiston, for plaintiffs-appellants.

Wynne M. Blake, of Blake, Feeney & Clark, Lewiston, Michael E. McNichols, Orofino, for defendants-respondents.

DONALDSON, Chief Justice.

This action concerns the right of the defendants-respondents, Lewiston Gun Club, its president and its board of directors, (hereinafter the Gun Club), to disconnect the plaintiffs-appellants, Duthies', waterline from the Gun Club's waterline.

The Gun Club installed at its own expense approximately 5,000 feet of domestic and irrigation water lines to supply water to property it leased from the City of Lewiston and Nez Perce County. These lines connected to the Lewiston Orchards Irrigation District pipeline. The irrigation district contracted to sell surplus water to the Gun Club. Such contracts are routinely given to users located outside the irrigation district.

Plaintiffs-respondents, John and Rosemary Duthie, started planning in 1971 to build a home on the property of John's parents, plaintiffs-respondents, J. Earl and Ernestine Duthie. This property is located near the Lewiston Gun Club. Construction of the home was started in November of 1972. In the fall of 1972, John Duthie contacted the then president of the Lewiston Gun Club, Zane Clinton, and requested permission to hook up to the Gun Club's domestic water line. Conflicting testimony was presented at the trial of the *second* action regarding this request. John Duthie testified that permission was granted and that his right to use the waterline was not limited in any fashion. Zane Clinton, who was called as a witness by Duthie, testified that the Gun Club's board of directors granted permission to hook up to the line "on a temporary basis until either he got water from the city or some other source." Additionally, three members of the then board of directors testified at the trial of the *second* action that they believed at the time the request was granted that the hookup was going to be only temporary.

Following the granting of permission, the Duthies constructed the line in March of 1973 and obtained a surplus water contract from the irrigation district. The Duthies used the Gun Club's waterline and paid their water bills directly to the irrigation district until their line was cut off by the Gun Club in October of 1977.

In 1975, the Gun Club brought the first action, Case No. 29669, in the Second Judicial District Court of the State of Idaho against the Duthies alleging that the Duthies had trespassed upon the Gun Club's property by hooking up to the Gun Club's waterline and were thereby unjustly enriched. The Gun Club sought $2,000 as a contribution to construction cost plus the sum of one-third (⅓) of all maintenance bills "for so long as the defendants [Duthies] are connected" to the Gun Club's line or, in the alternative, an order requiring the

Duthies to disconnect their waterline from the Gun Club's waterline. On January 23, 1976, the trial court granted with prejudice the Duthies' motion for involuntary dismissal pursuant to I.R.C.P. 41(b) based on its findings that the Duthies "had permission" to hook up to the Gun Club's waterline and, therefore, were not trespassers. The Gun Club was capable of granting a license at least to the extent of its interest in the property as a lessee.

In the spring of 1976, Al Connerley, a member of the then Gun Club's board of directors discussed with the club's attorney the possibility of getting the Duthies to contribute to maintenance of the waterline. His attorney, at Connerley's request, contacted the Duthies' attorney and requested maintenance contribution. The Duthies refused. On August 2, 1977, the Gun Club's board of directors decided that the Duthies' waterline should be cut off. On October 26, 1977, Al Connerley cut and capped the Duthies' waterline precipitating this second suit.

After the waterline was cut and capped the Duthies filed a complaint and sought and received a Temporary Restraining Order from the district court. In due course, the Gun Club filed a motion to dissolve the temporary restraining order and it was granted. The Duthies' original complaint in the second action and the clerk's certificate on appeal also named as defendants the Lewiston Orchards Irrigation District, the City of Lewiston, Nez Perce County (not listed on Clerk's Certificate on Appeal), and the United States Bureau of Reclamation. The trial court granted the City of Lewiston's and Nez Perce County's motions to dismiss. The Lewiston Orchards Irrigation District, the City of Lewiston, Nez Perce County, and the U.S. Bureau of Reclamation did not participate in the trial of the second action. Additionally, the Duthies' Notice of Appeal did not indicate that notice was given to any of them.

Before the second trial began the district court heard and denied cross-motions for summary judgment. The subject of the Duthies' motion for summary judgment was the res judicata effect of Case No. 29669 on the instant case. The Duthies argued that the Gun Club should be precluded from claiming in the second action that the license was revoked because that issue of revocation should have been raised in the first action. In reviewing this issue, the trial court held that res judicata applies only to issues raised by the pleadings. After a review of the complaint and answer in Case No. 29669, the trial court found that nothing in the pleadings raised the issue of "use or continued use of the waterline in question." The motions for summary judgment were denied.

Following trial, the court found that the Gun Club was not estopped from revoking the Duthies' license and was entitled to do so. The Duthies appealed.

Firstly, on appeal, the Duthies contend that this issue of res judicata was erroneously decided. Even though we disagree with the trial court's finding that res judicata applies only to issues raised by the pleadings, where an order of the lower court is correct but based upon an erroneous theory, the order will be affirmed upon the correct theory. *Foremost Insurance Co. v. Putzier,* 102 Idaho 138, 627 P.2d 317 (1981).

Concerning when res judicata applies, this Court stated in *Intermountain Food Equipment Co. v. Waller,* 86 Idaho 94, 383 P.2d 612 (1963) that,

"We think the correct rule to be that in an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim, but also as to every matter which might and should have been litigated in the first suit." *Id.* at 98, 383 P.2d at 615 (quoting *Joyce v. Murphy Land & Irrigation Co.,* 35 Idaho 549, 553, 208 P. 241, 242 (1922)).

Therefore, not raising the issue in the pleadings is not grounds for denying the motion because following *Intermountain Food Equipment,* res judicata applies to every matter which might and should have

been litigated in the first suit whether or not it was raised in the pleadings. However, before reaching the issue of whether the matter might and should have been litigated in the first suit, it must first be established that the second action is between the same parties upon the same claim or cause of action.

The second suit was between the same parties and concerning what constitutes the same claim or cause of action this Court recently stated that, "The 'sameness' of a cause of action for purposes of application of the doctrine of *res judicata* is determined by examining the operative facts underlying the two lawsuits." *Houser v. Southern Idaho Pipe & Steel, Inc.*, 103 Idaho 441, 446, 649 P.2d 1197, 1202 (1982). (citing Restatement (Second) of Judgments, § 61, Comment a (Tent. Draft No. 1, 1973)).

Even though two actions may arise out of the same operative facts between the same parties this Court has also stated that "[h]owever, sometimes a single trial covering all aspects of the case will be neither desirable nor feasible. Evidence bearing upon one aspect of a case may be unduly prejudicial with respect to another. Or certain matters may be ripe for trial while consideration of others would be premature." *Heaney v. Board of Trustees of Garden Valley School District No. 71*, 98 Idaho 900, 903, 575 P.2d 498, 501 (1978).

■ In this case facts occurred subsequent to the first trial that led to the filing of the second suit, *i.e.*, the cutting and capping of the waterline. Therefore, even though the same facts may be used to determine whether the license was revocable as were used in the first action to determine whether a license existed, because facts occurred subsequent to the first trial that triggered the filing of the second suit, we hold that the issue of revocability was not ripe for trial in the first case, but rather, was premature until the license was actually revoked. *Heaney, supra.* Therefore, we uphold the trial court's decision that res judicata does not bar the raising of the issue of revocability in the second suit.

The remaining assignments of error have been reviewed and the Court finds they are without merit.

Judgment affirmed.

Costs to respondents.

BAKES, J., McFADDEN, J., (Ret.), and SCOGGIN, J., Pro Tem, concur.

BISTLINE, Justice, dissenting.

Eighteen months ago in sublime naivete joining the (now withdrawn) Court's opinion, I paused to add that "[t]here is an area where this Court over the years has been consistent and steadfast, and that is in upholding its doctrine of *res judicata.*" Today that dream is shattered; the only consistency which can now be ascribed to this Court is its policy of being consistently inconsistent. Today's opinion is surely the epitome of appellate ambivalence, arming the Court with opposing lines of precedent which serve the purpose of finding justification for whatever appellate result is desired. Today's opinion is result oriented; the Court's entire rationale for an incomprehensible result, wholly at odds with all notions of *res judicata,* is only this, and nothing more:

> "[B]ecause facts occurred subsequent to the first trial that triggered the filing of the second suit, we hold that the issue of revocability was not ripe for trial in the first case, but rather, was premature until the license was actually revoked. *Heaney, supra.*"

Court's opinion, p. 290.

The beauty of the Court's opinion is found not in the language quoted, but in the fact that such language is used by an Idaho Supreme Court while at the same time and in the same opinion setting forth sound law from a sound court just twenty years ago:

> "Concerning when res judicata applies, this Court stated in *Intermountain Food Equipment Co. v. Waller*, 86 Idaho 94, 383 P.2d 612 (1963) that,
>
> > " 'We think the correct rule to be that in an action between the same parties upon the same claim or demand, the former adjudication concludes par-

ties and privies not only as to every matter offered and received to sustain or defeat the claim, but also as to every matter which might and should have been litigated in the first suit.' *Id.* at 98, 383 P.2d at 615 (quoting *Joyce v. Murphy Land & Irrigation Co.,* 35 Idaho 549, 553, 208 P. 241, 242 (1922)).

"Therefore, not raising the issue in the pleadings is not grounds for denying the motion because following *Intermountain Food Equipment,* res judicata applies to every matter which might and should have been litigated in the first suit." Court's opinion, pp. 289–290.

The above passage from *Intermountain Food Equipment* was augmented by another paragraph in that case which followed immediately:

"In further discussing this doctrine, it was stated in *Marshall v. Underwood,* 38 Idaho 464, 221 P. 1105:

" 'The doctrine of res judicata, or estoppel by judgment, as it is sometimes termed, is a rule of law founded on the soundest consideration of public policy. If an action is brought and the merits of the question are discussed between the parties in open court and considered by the trial court, and a final judgment is obtained by either, the parties are then concluded and cannot again canvas the same question in another suit. The great preponderance of authority sustains the rule that the estoppel of a judgment covers all points which were actually litigated and which actually determined the judgment or finding, whether or not they were technically in issue on the face of the pleadings.' "

86 Idaho at 98, 383 P.2d at 615.

That passage, for those who retain the Idaho Capitol Reports, was at one time part of the now withdrawn majority opinion which issued from this Court, and which I heartily endorsed. It is here beyond cavil that the Gun Club in the first action, No. 29669, filed in 1975, claimed the right to disconnect Duthie's water. One need only refer to the prayer of the Gun Club's complaint in No. 29669:

"WHEREFORE, plaintiff prays:

"1. For the first cause of action, for the sum of $2,000.00 for connecting on to said water line and for the value of one-third of the maintenance of said water line from March 16, 1973, for as long as the defendants are connected thereto.

"2. For the second cause of action in the alternative, *for an order of the Court directing that defendants immediately cease and desist from trespassing and connecting on to plaintiff's water line.*

"3. For costs of suit.

"4. For such further and other relief as the Court deems just and proper.

"DATED this 2nd day of April, 1975.

/s/ William Vern McCann, Jr.
William Vern McCann, Jr.
Attorney for Plaintiff"

R., pp. 104–05 (emphasis added).

But, if that is not sufficient to whet the legal appetite, the appeal record also contains the Gun Club's trial brief in No. 29669, which concludes with this paragraph:

"It is for the reasons that plaintiff has never given permission to the defendants to trespass upon said property and that further, plaintiff did not desire defendants to trespass upon the property of plaintiff to use said line and further, for the reason that defendants' trespass upon plaintiff's property has unjustly enriched defendant to the amount of $2,000.00, plus the costs of the line, that the plaintiff respectfully requests the court to find on behalf of the plaintiff and to award plaintiff the sum of $2,000.00, plus one-third of the maintenance of said water line from March 16, 1973, for as long as the defendants are connected thereto, *or in the alternative to issue an order, ordering defendants to cease and desist immediately* from trespassing upon the property of the plaintiff *and to unhook said water line.*

"RESPECTFULLY SUBMITTED,

/s/ William Vern McCann, Jr.
William Vern McCann, Jr.
Attorney at Law
Attorney for Plaintiff"

R., pp. 139–40 (emphasis added).

That action ended at the end of plaintiff's case on a motion for involuntary nonsuit. The Findings of Fact and Conclusions of Law entered therein recite that Duthie's motion for dismissal was "for the reason and upon the ground that upon the facts and the law applicable thereto, the *Plaintiff had failed to show any right to relief . . . .*" R, pp. 143–44 (emphasis added). The action was dismissed with prejudice on January 23, 1976. Obvious to even the uninitiated, the Gun Club's action sought the disconnection of Duthie's water. It did not prevail, and it did not appeal. Better than appeal— if one is to throw open the doors to self-help, revolution, and insurrection, it simply hired a new lawyer, and cut the water line which carried to the Duthies their domestic water supply—an act of barbarism if ever there was one. The ploy is self-evident; the Duthies, on being so treated could respond in kind, or they could go to court. Obviously, the Gun Club, represented by illustrious counsel, could not in good grace have gone back into court and file a second lawsuit identical to the one just recently dismissed, which had sought a judicial determination that Duthie's water could be cut off. Naturally, and as even the Court's opinion points out, cutting the Duthies' water line precipitated the second suit. The Duthies had no alternative but to seek restoration of their water line, or pay extortion money, or go without water.

The Court's opinion lays out as nicely as might be wanted the basis on which the Duthies' water line was severed:

"In the spring of 1976, Al Connerley, a member of the then Gun Club's board of directors discussed with the club's attorney the possibility of getting the Duthies to contribute to maintenance of the waterline. *His attorney,* at Connerley's request, *contacted the Duthies' attorney and requested maintenance contribution. The Duthies refused.* On August 2, 1977, *the Gun Club's board of directors decided that the Duthies' waterline should be cut off.* On October 26, 1977, Al Connerley cut and capped the Duthies' waterline precipitating this second suit." (Emphasis added.)

One ought not ignore, however, that in the first action, No. 29669, the Gun Club had squarely placed in issue the Duthies' alleged liability for maintenance of the Gun Club's own water bills since 1973:

"VII

"That a reasonable value for the cost of connection to plaintiff's said water line which unjustly enriched defendants, is the sum of $2,000.00, plus the sum of one-third of all the maintenance bills incurred by plaintiff from March 16, 1973, until such time as defendant is no longer connected on to plaintiff's said water line."

This theory of case was carried into the prayer of the complaint:

"WHEREFORE, plaintiff prays:

"1. For the first cause of action, for the sum of $2,000.00 for connecting on to said water line and for the value of one-third of the maintenance of said water line from March 16, 1973, for as long as the defendants are connected thereto."

The Duthies, sans water, and hence sans sanitation, resorted to the same district court which had first resolved the controversy in No. 29669, filing this action, No. 13077, in district court, seeking restoration of the water line, and damages, both compensatory and punitive, for the wanton and malicious actions of the Gun Club in severing the line. The Duthies' claims did not in any way place in issue those issues which had been litigated to a conclusion in the first action. The first action had left their water supply intact. The Gun Club severed the line, and it was this conduct which was the basis of the Duthies' lawsuit.

It is said, perhaps tongue-in-cheek, that "facts occurred subsequent to the first trial that triggered the filing of the second suit." Court's opinion, p. 6. The "facts" were of the Gun Club's doing, consisting of the severing of a water line to the Duthie residence, done in an attempt to force payment of monies which the Gun Club's complaint in No. 29669 sought and failed to establish.

From that impossible premise it is *held* "that the issue of revocability was not ripe for trial in the first case, but rather, was premature until the license was actually revoked." Court's opinion, p. 6. This is so absurd as to hardly merit discussion. It is inescapable that the first action was initiated by the Gun Club and prayed for the relief of judicial determination of the right to disconnect. The theory it advanced at the first trial, set forth in a brief found in this record, was that the Gun Club was not responsible for the acts of its officers. It *could have* also claimed the right to disconnect on the basis of a revocable license. And it should have. The entire theory behind the doctrine of *res judicata* is to preclude piece-meal lawsuits that are not *desirable.* To illustrate, this Court has an obsession against piece-meal appeals, and constantly dismisses them of its own motion, unless, and even when, properly certified.

The trial court, giving credit where credit is due, misapplied the doctrine, believing that *res judicata* applied only to issues which are pleaded and actually tried. But that was error, says the Supreme Court, and out of nothing but whole cloth manufactures a novel exception to the long-established doctrine of *res judicata* —which so it says makes the erroneous trial court decision of no consequence. Of the two theories, that of the trial court will strike most attorneys as the best of a poor lot.

It must be noted that the Court's newly created exception to Idaho's body of *res judicata* law is not at the request or instigation of counsel for the Gun Club. The Gun Club, on the rehearing, makes legitimate contentions, one of which is to accept that the issue of revocability was a matter which might and should have been litigated, and then to note that "[e]ither party could have litigated the revocability of the license." Gun Club's brief on petition for rehearing, p. 6.

The ready answer to that hypothesis has already been noted. It was the Gun Club who brought the Duthies into court in No. 29669, and it was their claim in that action that the Court should judicially sever the water connection. Only as a second thought entertained *after the first trial,* with the benefit of illustrious counsel, did it occur to the Gun Club that it had sure and certain relief if indeed all that Duthie ever possessed was a license. "Hindsight," or, "what might have been," has plagued every lawyer from time immemorial. But it does not provide a right to precipitate a second try by utilizing self-help. The untenability of the Gun Club's position is readily discerned by asking: Why, if it wanted to be shed of Duthie, did it not simply disconnect his water line without bothering to bring Duthie to court in No. 29699? How, if it was not permissible to engage in such conduct on their part at that time, did it become permissible after they had been in court seeking a judicial disconnect, but failed to prevail?

In a later brief filed for the rehearing, the Gun Club advances this thought:

"Though the Gun Club and the Duthies *could* have litigated the issue of the revocability of the Duthies' license in Case No. 29669, they did not do so. since they did not actually litigate the issue of the revocability of the ∙license in Case No. 29669, *res judicata* does not bar the litigation of that issue in Case No. 37367."

Even today's majority agrees that the principles of *res judicata* encompass that which should have been as well as that which was actually litigated. But more than that, and as I point out, the Gun Club which came to court once to establish the right to a judicial disconnect—on one theory—cannot return at a later date to try out yet another theory which belatedly occurred to new counsel after original counsel tried and lost on but the one theory advanced. Why not retain yet a third counsel, and try a third theory in a third lawsuit? Ad infinitum.

The Court today has backed away from what would have stood out in the Idaho reports as an outstanding opinion. In honest obeisance to its clarity, and doubtful of my ability to improve upon the same, and putting aside worry over bald accusations of plagiarism, I now incorporate for the benefit of posterity portions of the now

withdrawn earlier Court opinion which at one time was, and in my view remains, a learned and precedent-backed disposition of the appeal: Duthies on appeal, contend that the issue of res judicata was erroneously decided. We agree.

Recently in *Heaney v. Board of Trustees of Garden Valley School District No. 71*, 98 Idaho 900, 902–903, 575 P.2d 498, 500–501 (1978), we stated

> "[t]he policy expressed by the doctrine of *res judicata* is that litigation which is repetitious or which is inefficient by virtue of needless fragmentation should not be tolerated because it unnecessarily burdens both the judicial system and the party who must respond. *See* 2 A. Freeman, Law of Judgments § 626 (5th ed. 1925); Restatement of Judgments § 62, Comment a (1942). Against this policy must be weighed society's interest in providing a forum for the just and responsive adjudication of every aggrieved party's claim. . . .
>
> "Ordinarily, efficiency requires that all claims to relief based upon the same underlying transaction be pursued in a single action. This is because matters common to the several components of the action need be addressed only once, rather than several times in greater or lesser detail. However, sometimes a single trial covering all aspects of the case will be neither desirable nor feasible. Evidence bearing upon one aspect of a case may be unduly prejudicial with respect to another. Or certain matters may be ripe for trial while consideration of others would be premature."

*Heaney, supra,* framed its issue in terms of whether the matter *might* and *should* have been litigated in the earlier action, consistent with the language of *Joyce, supra.*

In *Ramseyer v. Ramseyer,* 98 Idaho 554, 556, 569 P.2d 358, 360 (1977) (hereinafter Ramseyer II), this Court reaffirmed its position that parties, who are given the capacity to present entire controversies, are expected to do so citing *Joyce, supra,* and Restatement (Second) of Judgments § 61 Comment a (Tent. Draft No. 1, 1973).

*Ramseyer II, supra,* further states that the rationale behind the "might and should have been" rule of *Joyce, supra,* is strengthened by the "evolution of modern systems of pleading and their free permissive joinder of claims, liberal amendment provisions and compulsory counterclaims." In other words the more liberal and flexible that the modern rules of pleading and amending become, then the more restrictive becomes the res judicata effect in a second action on a party who has not availed himself of these liberal and flexible rules in the first action.

The question on appeal, then, is whether the revocability of the permission given by the Gun Club to the Duthies was a "matter which might and should have been litigated" as part of Case No. 29669. In prior cases dealing with this type of issue, this Court has approached it as a decision between the policy of eliminating inefficient, repetitious litigation and the policy of providing a forum for every just claim. *Heaney, supra; Ramseyer II, supra.*

In *Heaney, supra,* the plaintiff was discharged from his teaching position and sought reinstatement by filing a mandamus action against his employer. Summary judgment was granted to the school district. Then the plaintiff filed a second suit against the school district seeking damages. The school district claimed that plaintiff's damage action was barred by the res judicata effect of the mandamus proceeding. Although it was recognized that the plaintiff could have combined his damage and reinstatement actions pursuant to I.R.C.P. 18(a), this Court held that res judicata did not make it necessary to so combine them. While it was specifically recognized that res judicata should be applied to prevent repetitious litigation, this Court also stated that "sometimes a single trial covering all aspects of the case will be neither desirable nor feasible" and that justice will often require that separate trials be provided "where mandamus and damages are concerned." *Heaney, supra.*

In *Ramseyer v. Ramseyer,* 98 Idaho 47, 558 P.2d 76 (1976) (hereinafter Ramseyer I), the plaintiff brought an action for a judicial

dissolution and accounting of a partnership. The trial court found, and this Court affirmed in *Ramseyer I,* that the partnership had been dissolved and the process of winding up the partnership affairs had been completed by earlier transactions between the parties. Based on these findings, plaintiff's action was barred by the statute of limitations. The plaintiff then filed a second suit to quiet title to property that had been part of the partnership property prior to dissolution but was not explicitly dealt with in either the earlier transactions or in *Ramseyer I.* The trial court granted summary judgment for the defendants and this Court affirmed in *Ramseyer II* based on the res judicata effects of *Ramseyer I.* This Court held that the state of facts giving rise to plaintiff's claim had not changed from the first to the second action and the essential relief sought on *Ramseyer II* was no different from that sought in *Ramseyer I.*

In considering the two competing policies underlying res judicata, we are influenced by the following factors quoted by Justice Shepard in his dissent to *Heaney, supra* at 904–905, 575 P.2d at 502–503:

"The sameness of the claim in the first as contrasted with the second action is determined by examining the transaction or operative facts underlying the two suits. As stated in Restatement (Second) of Judgments § 61 Comment a (Tent. Draft No. 1, 1973):

'The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, *or variant forms of* relief flowing from those theories, that may be available to the plaintiff.... The transaction is the basis of the litigative unit or entity which may not be split.'

"What factual grouping constitutes a 'transaction' is to be determined pragmatically giving weight to such considerations as to whether the facts are related 'in time, space, origin or motivation, and whether, taken together, they form a convenient' trial unit, and whether their treatment as a unit conforms to the par-

ty's expectations or business understanding or usage. Comment b to § 61." (emphasis in original).

In the instant case, the Gun Club brought the first action in trespass seeking contribution for construction and maintenance of the water line or, in the alternative, disconnection of the Duthies' water line from its water line. It is especially noteworthy that the contribution sought by the Gun Club for maintenance was for a period from March 16, 1973, until the Duthies' line was no longer connected to the Gun Club's line. In other words, the Gun Club elected to seek past, present, and prospective damages. It has been recognized that such an election is appropriate. *See Kornoff v. Kingsburg Cotton Oil Company,* 45 Cal.2d 265, 288 P.2d 507 (Calif.1955); *Spaulding v. Cameron,* 38 Cal.2d 265, 239 P.2d 625 (Calif.1952); Restatement (Second) of Torts § 930 (1977); McCormick on Damages § 127, at 511 *et seq.;* 4 Sutherland on Damages § 1046, at 3874 (4th ed.).

The Duthies raised the defense of license. In the first action, the Gun Club merely denied that a license was granted. It made no allegation that they had revoked or were revoking the license. In the second action, the Gun Club now admits that a license exists but alleges that it was only temporary and that they have since revoked it. Additionally, the trial court in the second action found that the Gun Club cut and capped the Duthies' water line after the Duthies refused the Gun Club's request for maintenance contribution, which it made following the original trespass litigation. This finding of the trial court is supported by substantial and competent evidence.

The facts newly alleged by the Gun Club in the second action are so closely tied to the fact situation alleged in the first action that judicial efficiency and fairness to the Duthies requires that they should have been raised in the first action. The factual situation regarding the estoppel aspect of the revocation of the license did not change during the time from the first to the second action. The Gun Club's disconnection of

the Duthies' water line and the demand for maintenance contribution are remedies they sought and failed to receive in Case No. 29669. The Gun Club could have and should have pursued the relief, it later awarded to itself in the first action. The Gun Club, having failed to pursue this avenue of relief in the first action, become precluded from litigating it in future actions.

I return to my earlier opinion of August 11, 1981, to point out the readily drawn distinction between the ordinary civil action as compared to a mandamus action which may also in the same action litigate damages, pointing also to that which I previously quoted from our unanimous *res judicata* decision in *Ramseyer:*

*Heaney* was not the usual civil action insofar as res judicata principles are concerned. It is a case which all concede could have gone either way, there being no prior Idaho decision touching upon the subject other than *Sutton v. Hunziker,* 75 Idaho 395, 272 P.2d 1012 (1954), wherein the Court noted that in a prior action in mandamus some of the alleged damages resulting from the disconnection of the electrical service were mentioned in the complaint, no damages were prayed for, the issue was not presented to the court, and no damages were mentioned or allowed in the judgment. However, I voted with the Court in *Heaney* rather than with Justice Shepard because mandamus *is* a special proceeding supposedly to be brought for a well defined purpose. An issue of damages is entirely incidental, and, as I have always read I.C. § 7–307 (now repealed) and now read I.R. C.P. 74(d), is discretionary with the court in which mandamus is sought. It would be a rare situation where this Court, for instance, would undertake a determination of damages incident to a mandamus petition, yet we receive many such petitions.

There is an area where this Court over the years has been consistent and steadfast, and that is in upholding its doctrine of res judicata. Our disposition of this case requires no more than a comparative review

of the two involved cases, Nez Perce County Civil No. 29669, the first action, and Nez Perce County Civil No. 37367, the second action—now before us on appeal—and a citation to *Ramseyer,*[1] wherein we recently said:

"The drafters of the Restatement (Second) of Judgments summed up the law on this matter in their Comment *a* to section 61:

" 'The law of *res judicata* now reflects the expectation that parties who are given the capacity to present their "entire controversies" shall in fact do so.'

This expectation that entire controversies will be presented and that all relevant material will be produced has long been the rule in Idaho:

" 'We think the correct rule to be that in an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim *but also as to every matter which might and should have been litigated in the first suit.'* (Emphasis added.) *Joyce v. Murphy Land etc. Co.,* 35 Idaho 549, 553, 208 P. 241, 242 (1922).

The rationale behind this long established rule has grown ever stronger with the evolution of modern systems of pleading and their free permissive joinder of claims, liberal amendment provisions and compulsory counterclaims." 98 Idaho at 556, 569 P.2d at 360.

The controversy here tried a first and then a second time centered around Duthies' rights relative to their obtaining water from and through Gun Club's system. Gun Club initiated the first action; it precipitated the second action. It did so by the unneighborly act of depriving the Duthies of their supply of domestic water—which some might consider a down right mean act. It did serve the purpose of bringing the Duthies into court a second time, in the posture of coerced plaintiffs.

1. *Ramseyer v. Ramseyer,* 98 Idaho 554, 569    P.2d 358 (1977).

Paraphrasing from *Ramseyer,* when Gun Club forced the second action in No. 37367, the state of facts giving rise to the contentions which they therein espoused had not changed from the state of facts attendant to their contentions made in the first action.

Principles of res judicata prohibit Gun Club from revitalizing or relitigating issues which were or should have been tried in the first action which went to a final judgment.

A concluding thought. "Dissent is a part of the American scene, but its exercise on the appellate court level occurs only when a justice's sense of outrage overcomes his sense of inertia."[2] "My brethren in the majority have departed from their normally rational temperament ...."[3] Totally overlooked, and, if not, then ignored, in the majority opinion is the rather elementary fact that the Gun Club and its newly retained counsel never at any time pretended or purported to notify Duthie that they had a right to revoke the license, or that they did revoke it. They avoided all legal measures and indulged in self-help of the type that no court can condone. If at any time they had a right to revoke, they were entitled to attempt to come back into court to exercise that right. That is what was required of them.

The opinion the Court issues today does not serve to add to its respectability, in which regard it compares favorably with its recent *Chandler*[4] and *Leliefeld*[5] opinions. The science of jurisprudence in Idaho may be seen as falling on hard times.

BISTLINE, Justice, dissenting from denial of rehearing.

The Court today issues its order without opinion (*cf. Gomez v. Argonaut,* Idaho, S.Ct. No. 14248, opinion released May 16, 1983), denying the Duthies' petition for rehearing. Thus presented with a last minute reprieve from its folly in erasing the last vestige of any consistency in this area of the law, the Court summarily eschews the opportunity. I write one final time in this case only so that the other members of the Court participating may see exactly what it is they do, and to make certain that it is not counsel for the Gun Club upon whom responsibility is placed for this aberration in the supposed science of jurisprudence—as it certainly will some day hence be so denominated.

I.

Perhaps my earlier effort was insufficiently succinct. Accordingly, I now only direct attention to the inescapable fact that the Gun Club initiated the first action, No. 29669, and claimed the right to disconnect the Duthies' water line:

"WHEREFORE, Plaintiff [Gun Club] prays:

. . . .

"2. ... in the alternative, *for an order of the Court directing that defendants immediately cease and desist from* trespassing and *connecting on to plaintiffs'* water line."

R., pp. 104–105.

As I earlier pointed out, the Gun Club's trial brief in that action, No. 29669, specifically brought that issue to the attention of the district court—one would suppose on the basis that it was feared the court might otherwise have missed reading it in the pleadings. And, as I pointed out before, No. 29669 ended in a dismissal entered

"for the reason and upon the ground that upon the facts and the law applicable thereto, the *Plaintiff* [Gun Club] *had failed to show any right to relief* ..."

The Gun Club had a right to appeal, of which it did not avail itself.

As I pointed out heretofore, and as restated in the Duthies' brief supporting their

**2.** *Deshazer v. Tompkins,* 93 Idaho 267, 272, 460 P.2d 402, 407 (1969) (Shepard, J., dissenting).

**3.** *State v. Wagenius,* 99 Idaho 273, 283, 581 P.2d 319, 329 (1978) (Donaldson, J., concurring and dissenting).

**4.** *Chandler Supply Co. v. City of Boise,* 104 Idaho ——, 660 P.2d 1323 (1983).

**5.** *Leliefeld v. State,* 104 Idaho 357, 659 P.2d 111 (1983).

petition for rehearing, the right in the Duthies to remain attached to Gun Club's water line was not merely a matter which *could have been an issue in the first lawsuit,* it was by the Gun Club recognized as a claimed right which they pleaded and whereby *they prayed for that* specific relief.

As their brief correctly points out, the Gun Club, after allowing appeal time to lapse, simply took the law into its own hands—the exact type of self-help which courts and civilized people condemn, and for obvious reasons—including breach of the peace and the likelihood of leading to the shedding of blood. Make no mistake about it—the Court in its opinion today will be seen as clearly condoning such unlawful conduct. I am at a loss to understand why. For as the Duthies submit, there is neither law, nor logic, nor any ascertainable *ratio decidendi* in the Court's facile statement "that facts occurred subsequent to the first trial that triggered the filing of the second suit." Those "facts" were the Gun Club's indulgence in self-help following a court adjudication which went against them— perhaps wrongly decided, from which they did not appeal to challenge the denial of the relief of disconnection which was a thrust of that first lawsuit.

The law of res judicata is this day in a shambles; attorneys may with impunity cite Duthie v. Lewiston Gun Club as eminent authority to sustain advising clients who have lost a suit to resort to self-help, and thereby have another try at accomplishing that which fell short in the first court action. Self-help may well be the first step toward anarchy.

## II.

I have stated, and continue to state, that the basis upon which the Court founds its opinion, above alluded to, is not in any way responsive to the supplications of counsel for the Gun Club.

At the second of the two presentations of oral argument in this case, the Gun Club was represented by an additional illustrious counsel, who argued. A main theme of his argument was not in any disparagement of existing Idaho precedent, but to suggest that the very doctrine of res judicata is based upon notions of efficiency, and that in proper cases, of which this was said to be one, efficiency should not be a wholly controlling factor. There followed this colloquy between learned counsel and myself:

"JUSTICE BISTLINE: It's not exactly because you revoked it, but perhaps *how* you revoked it. What you're really wanting now, as I understand it, Mr. McNichols, keeping in mind that you weren't in on the first lawsuit, you're trying to persuade us that your client should have the right to come to court the second time and in the second lawsuit prove that the license was revocable. That's all you're asking for.

"MR. MCNICHOLS: Yes.

"JUSTICE BISTLINE: And the Court has thrown in your face at the request of Mr. Givens the doctrine of res judicata. And I think we have to keep in mind that you were not in the first lawsuit.... And you mentioned efficiency and I'd just like to try my own thinking out on you, because you've always been very helpful, and you mention efficiency and you mentioned the fact that you believed yourself, and I don't doubt that you have a strong body of law to back you up, that that license might have been revocable. And you say that that wasn't litigated in the first lawsuit, the revocability issue. Then, when the first lawsuit came to a conclusion it still hadn't been litigated and so your client, not your client at the time, but a client, then took it upon himself to solve in an efficient manner, to borrow your expression, the revocability. So it did it, either with a cutting torch or a hacksaw, and cut the line. That is efficient because it would have taken time to go to court and if the Duthies were so disposed they might have just turned tail and gave in, but they didn't. Now my question is, going back to your earlier argument when you were talking about the pleadings and the issues that were raised and weren't raised and should have been tried and maybe shouldn't

have been tried, I'm satisfied that if I ask you this question or ask Mr. Blake this question, you would say in the first lawsuit, had you filed an action for trespass trying to throw these people off of this line, and claiming they had no right, and had they been so bold to come back and say we have a license, had you been in charge of that lawsuit, you would have said fine, perhaps you do and perhaps you don't, but if you do have its revocable and in this little pleading which I will file, called a reply, I am now revoking that license, then that issue would have been tried. Where am I wrong?

"MR. MCNICHOLS: You're not wrong, you're not wrong at all. I can tell you that I wish that had happened. Mr. Blake wishes that that had happened and the Gun Club wishes that had happened because we presume the evidence at that trial would have been the same as it was before Judge Mossman, we presume the result would be the same and we wouldn't have had the expense of a second trial.

"JUSTICE BISTLINE: Then the opinion of the Court that went out dealing with res judicata points out, and is based upon one of the principles which goes into it, that a party in court has the right to litigate anything he wants to litigate, and especially if he's on the equity side of the Court, there's an old maxim that we learned back in law school "Equity seizes the whole controversy and retains it till it's all over." When equity is ousted of jurisdiction because a final judgment's entered with no objection, then it seems like the principle of res judicata unfortunately might tend to bar your client from coming back again and again.

"MR. MCNICHOLS: I understand that view. I would say, Your Honor, we didn't come back. I understand your response to that is, no, you went out with the saw and cut the pipe and forced the Duthies out, which no doubt they did. *But nothing would please the Gun Club more than if the scenario had transpired as Your Honor suggested or if the original pleading had said Cause of Action I, you're trespassing, Cause of Action II, if you have a license it's revoked, wherefore, and it would have been all over.*

"JUSTICE BISTLINE: You see the problem I have, thinking that if I were in charge of the lawsuit, or if you were in charge of that lawsuit, and I know if Mr. Blake were in charge of it, and somebody said I've got license, and, I would say in the pleading, would come right out, that was yesterday, and today you don't.

"MR. MCNICHOLS: Right, maybe one of the things is they didn't use the word license; I don't believe they did. And two, that there was no counterclaim to which a reply was due. It was only an affirmative defense to which there is no responsive pleading.

"JUSTICE BISTLINE: It's permitted. I think anything's permitted.

"MR. MCNICHOLS: Well, an amended complaint. We could have amended the complaint or certainly it could have been approached somehow but it would not be in the ordinary course of things; there would have been a responsive pleading filed, but your scenario is exactly accurate as far as I can tell.

"JUSTICE BISTLINE: Thank you.

"MR. MCNICHOLS: Let me close by saying that if the Gun Club has to provide free use of this water line to the Duthies and if the Gun Club has to pay damages to the Duthies, that may be efficiency but it's not justice. Thank you."

From the foregoing it seems apparent that counsel may not have realized that the complaint in No. 29669, in which said counsel did not participate, had specifically pleaded for the very relief which the Gun Club did not obtain. Under the law of res judicata, as it has always heretofore read, having claimed a right to disconnect the Duthies, the Gun Club was required to in their lawsuit advance each and every theory upon which they might be entitled to prevail.