673 P.2d 398

**Glen ERICKSON and Jacquelyn B. Erickson, husband and wife, Plaintiffs-Appellants,**

v.

**Donald AMOTH and Myrna Amoth, husband and wife, Defendants-Respondents.**

**No. 14498.**

Supreme Court of Idaho.

Dec. 7, 1983.

Neil O. Walter, Bonners Ferry, for plaintiffs-appellants.

Gary A. Finney, Sandpoint, for defendants-respondents.

BISTLINE, Justice.

The district court's Order Granting Defendants' Motion for Summary Judgment amply sets forth the necessary history of the ongoing controversy between the Ericksons and the Amoths:

"On October 29th, 1974, the Plaintiffs, Glen J. Erickson and Jacquelyn B. Erickson, husband and wife, sued the Defendants, Donald Amoth and Myrna Amoth, husband and wife, in Boundary County Case No. 5074 in order to condemn a private roadway across the Defendants' property. (All other claims for relief were waived by Erickson).

"On October 18, 1976, this Court made Findings of Fact and Conclusions of Law finding in favor of the Defendants and against the Plaintiffs and dismissing the Plaintiffs' complaint.

"A copy of the Court's Memorandum Decision in Case No. 5074 is attached hereto as though set out in full herein.

"The map, Exhibit # 3, attached to the Court's prior opinion shows the Plaintiffs' property outlined in black ink and the Defendants' property outlined in red ink. The roadway sought to be condemned in Case No. 5074 shows as a dotted red line and virtually bisected Defendants' property in a north-south direction.

"Plaintiffs' appealed the Court's decision to the Idaho Supreme Court and on December 4th, 1978, the Supreme Court affirmed the decision of the District Court. (See *Erickson v. Amoth,* 99 Idaho 907, 591 P.2d 1074).

"The Supreme court held:

'The evidence supports the finding of the trial court that alternative access routes existed and the trial court was, therefore, correct in holding a case of necessity did not exist.

'Here the trial court balanced the relative situations, pro and con ... as to the respective convenience, inconvenience, costs and all other pertinent, connected facts ... in determining whether a reasonable necessity existed for the taking of the property ....'

"On April 24, 1979, the Plaintiffs filed the instant suit against the Defendants, once again seeking to condemn a private road right-of-way across the Defendants' property. The proposed road this time traverses along the west and north boundary of the defendants' property to the plaintiffs' property as shown by the map attached to the Complaint.

"There is no disputed material issues of fact concerning the following items:

"1.) The parties in both law suits are the same.

"2.) The land owned by both parties is the same land involved in both law suits.

"3.) The Plaintiffs' purpose in bringing both law suits was and is the same, i.e., condemnation of a private roadway across the Defendants' land.

"The only apparent difference between Case 5074 and the instant case is the proposed location of the roadway sought to be condemned by the Plaintiffs. Rather than proposing to bisect the Defendants' land as alleged in Case No. 5074, Plaintiff proposes to construct a new roadway along the Defendants' west and north boundary.

"By a Motion for Summary Judgment, Defendants raise the obvious defense of res judicata.

"It is Defendants' position that since this Court has previously held that the Plaintiffs' did not prove a reasonable necessity to condemn a roadway across the Defendants' land in case 5074, which decision was affirmed by the Supreme Court of the State of Idaho, the Plaintiffs' Complaint must be dismissed. In applying the doctrine of res judicata, the parties are generally concluded as to all matters that were put in issue, or might have been put in issue, or were necessarily implied in the prior decision, such as the right to condemn, the necessity therefore, etc. (*Olsen v. Board of Education,* (Utah), 571 P.2d 1336)

"In *City of Caldwell v. Roark,* 98 Idaho 897, 575 P.2d 495, our Supreme Court has held that an original condemnation proceeding was res judicata as to a second suit concerning all defenses that "could have been raised" in the prior action.

"Res judicata is recognized as a judicially created doctrine designed to prevent relitigation and to curtail multiplicity of actions by parties who have had an opportunity to litigate the same matter in a former action in a Court of competent jurisdiction.

"Res judicata is applicable to condemnation proceedings.

"Where a party has participated in such proceedings, but failed to fully pursue the matter as provided by law, that party will not be allowed to open a new and collateral inquiry, for the doctrine of res judicata must be invoked to bring an end to litigation which, without the doctrine, could be endless. (See *Corbin v. Madison,* 12 Wash.App. 318, 529 P.2d 1145).

'The doctrine of res judicata is but a manifestation of the recognition that endless litigation leads to confusion or chaos. The doctrine reflects the refusal of the law to tolerate a multiplicity of, or needless, litigation and is based on the worthy premise that the interest of proper administration of justice is best served by limiting parties to one fair trial of an issue or cause. It rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a Court of competent jurisdiction, and should not be permitted to litigate it again to the harrassment and vexation of his opponent.

'The doctrine of res judicata not only puts an end to strife, but recognizes that certainty in legal relations must be maintained. It produces certainty as to individual rights and gives dignity and respect to judicial proceedings. . . .'

"It is the conclusion of this Court, that Plaintiffs' cause of action in the instant case is identical in scope and content to the cause of action in Case No. 5074, that is, seeking a private way across Defendants' land by condemnation. If such a complaint were allowed to proceed, it would be possible that upon losing this suit, Plaintiff could continue to file additional law suits, contending a private way at other locations across the Defendants' land, to the point of harrassment, such procedure is not contemplated by the law.

"It is the conclusion of this Court that there are no material disputed issues of fact in this case and that Defendants' Motion for Summary Judgment dismissing the Plaintiffs' complaint should be granted."

R., pp. 61–64.

On this appeal the Ericksons concede that the parties in both lawsuits are the same; the properties involved in the two actions are the same, and the relief sought in both actions is the same, *i.e.,* condemnation by them of a roadway across the Amoth land. Nevertheless, and the heart of their contention is that, substantial differences between the two actions precludes application of the doctrine of *res judicata:* (1) the access now sought to be condemned; (2) the route sought is different, would not bisect the Amoth property, nor pass in close proximity

to the Amoth resident—which is now, as against then, in an area where the Amoths have constructed a shake mill; (3) *the Lederhos license agreement has expired and the present owners of the Lederhos property will not grant access over it;* (4) that the Amoths are not, nor planning, to graze cattle. We turn to the expiration of the Lederhos license, finding that distinction dispositive, noting that our 1978 opinion sustaining the district court rested largely on the district court's finding in the first case that the Ericksons' access through the Lederhos property was adequate. Today in reviewing the order granting the Amoths' motion for summary judgment, we are bound to accept as a fact that the Lederhos access is no longer available. The Amoths do not contend otherwise. Accordingly, the Ericksons do not have access to their property, and especially do not have such access as is an appurtenance to their property—which the Ericksons contend is available to them under Idaho law. For that reason, we are persuaded that the doctrine of *res judicata* was erroneously applied as a matter of law. In that regard we view the loss of access through the Lederhos property as a material subsequent event precluding the first judgment from operating as an estoppel to the maintenance of the second action. *Milbourne v. Milbourne,* 86 Idaho 213, 384 P.2d 476 (1963), was apparently overlooked by the district court, notwithstanding a thorough review of precedential cases dealing with the doctrine of *res judicata* and collateral estoppel. In the *Milbourne* case, the Court relied on and quoted § 335, Vol. 30A American Jurisprudence, p. 379, for the following statement:

" 'Generally, the doctrine of res judicata extends only to facts and conditions as they existed at the time the judgment was rendered and, ordinarily, res judicata does not apply where there are changed conditions and new facts which did not exist at the time of the prior judgment. The general view is that where, after the rendition of a judgment, subsequent events occur, creating a new legal situation or altering the legal rights or relations of the litigants, the judgment may

thereby be precluded from operating as an estoppel.' "

86 Idaho at 219, 384 P.2d at 479.

When Volume 46 of Am.Jur.2d was published in 1969, *Milbourne* was cited in footnotes 17 and 20 to § 443 of Judgments, as authority for the statement that "where, after the rendition of a judgment, subsequent events occur, creating a new legal situation or altering the legal rights or relations of the litigants, the judgment may thereby be precluded from operating as an estoppel," p. 613, and "it has been declared that the doctrine of res judicata extends only to facts and conditions as they existed at the time the judgment was rendered, and that a judgment is not res judicata as to rights which were not in existence at the time of the rendition of the judgment." P. 614.

Rather obviously our 1978 opinion hinged in a large part on the access which the Ericksons had by reason of a "road then in use by the Ericksons pursuant to a license agreement with the Lederhoses, who owned adjoining property." 99 Idaho at 910, 591 P.2d at 1077. Following that statement we declared that:

"It was then incumbent upon the Ericksons to prove that the alternative means of access were not *available* to them or that such means of access were not *reasonably adequate* or sufficient for their purposes.... The fact that the Ericksons' existing access was by way of a license, rather than an easement across the Lederhos' land, does not destroy either the evidence or the finding of the court that alternative routes existed nor the trial court's holding based thereon that necessity for condemnation did not exist."

99 Idaho at 910, 591 P.2d 1077 (emphasis added).

In petitioning for a rehearing the Ericksons went directly to our language as to "available" and "reasonably adequate" alternative means of access. Adequacy of the Lederhos route was conceded, but as to availability, they pointed to the language of the license, which was in writing, in duration for the last six months of 1976, and

given for the limited purpose of moving tractors and other equipment necessary for ground clearing. Concisely and to the sole issue presented on the petition, it was urged that "neither the trial court nor this Court has determined the issue of whether this alternative access is in fact available . . . . The road through the Lederhos' property could be a super highway, but if Erickson hasn't the right to use it, it means nothing." An amicus curiae brief was filed on behalf of the Idaho Land Title Association, urging that an access terminable at will is not a sufficient guarantee of access, and that the constitutional right to an easement is not prevented by an existing license. Although this Court denied a rehearing, it is readily apparent that the existence of the Lederhos license was of paramount significance in our 1978 opinion and ensuing order denying a rehearing. The expiration of the Lederhos license rendered our prior opinion inoperable and precluded it from barring a second condemnation action. We see no reason to depart from the general rule which a unanimous court twenty years ago announced in *Milbourne*.[1]

The summary judgment is reversed, and the cause remanded for further proceeding in conformance with this opinion. Costs to appellants.

DONALDSON, C.J., and BAKES and HUNTLEY, JJ., concur.

SHEPARD, J., dissents without opinion.

---

1. Both parties at oral argument discussed the Court's recent opinion in *Duthie v. Lewiston Gun Club*, 104 Idaho 751, 663 P.2d 287 (1983), each party seeing that opinion either as favorable or at least not adverse to its position. It is the consensus of the Court that our judgment in this case can be and is reached without resort to a re-examination of *Duthie*. We note only that *Duthie* was released long after the judgment below was entered, and hence was not a concern to the district court in entering its judgment.