# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38406

| | | |
|---|---|---|
| JESUS HURTADO and JOHN REITSMA, d/b/a J & J CALF RANCH, | ) ) ) | |
| Plaintiffs-Respondents-Cross Appellants, | ) ) ) | |
| v. | ) ) | Boise, February 2012 Term |
| LAND O'LAKES, INC., a Minnesota corporation; LAND O'LAKES PURINA FEED, LLC; | ) ) ) ) | 2012 Opinion No. 77 Filed: May 29, 2012 |
| Defendant-Appellants-Cross Respondents, | ) ) ) | Stephen Kenyon, Clerk |
| and | ) ) | |
| VALLEY CO-OP'S, INC., an Idaho corporation, | ) ) ) | |
| Defendants-Cross Respondent, | ) ) | |
| and | ) ) | |
| JOHN DOES and JANE DOES 1-X; JOHN DOE CORPORATIONS 1-V, | ) ) ) | |
| Defendants. | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

The verdict of the jury is <u>affirmed</u>. The district court's award of attorney fees is <u>affirmed</u>.

Maguire & Penrod, Pocatello, for appellants. David Maguire argued.

Law Office of Harry DeHaan, Twin Falls, for respondents. Harry C. DeHaan argued.

_____

HORTON, Justice.

1

This appeal arises from a products liability action brought by Jesus Hurtado and John Reitsma, d/b/a J & J Calf Ranch (J & J), against Land O'Lakes, Inc. (Land O'Lakes). J & J alleged that the Land O'Lakes milk replacer it used to feed its dairy calves was defective and caused the death of more than one hundred calves. A jury found in favor of J & J and awarded damages. Land O'Lakes appeals, arguing that the district court improperly admitted expert testimony and that J & J failed to prove both liability and damages. Land O'Lakes asks this Court to vacate the judgment of the district court and enter judgment in its favor or, alternatively, to vacate the judgment and order a new trial. J & J cross-appeals from the district court's award of attorney fees, arguing that the court abused its discretion by excluding fees incurred before and during previous litigation in this matter. J & J asks this court to vacate the award of attorney fees and remand with instructions to include attorney fees accrued in the first trial in its calculation of reasonable attorney fees. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2005, J & J purchased a Land O'Lakes milk replacer product called Purina 20-20 Milk Replacer and began feeding it to its dairy calves. According to Jesus Hurtado, after J & J began feeding with the Land O'Lakes milk replacer, the dairy calf herd experienced an increase in deaths from scours.[1] Hurtado stated that the normal mortality rate for calves at the J & J ranch is between three and five percent, but in the summer of 2005, the rate was 19 to 20 percent. J & J estimated it lost 130 calves from the scours problem and that the calves were worth $1000 each. J & J treated the calves with anti-bacterial drugs without success. Eventually, J & J started feeding a different product to the bull calves, and shortly thereafter the death rate from scours returned to normal in the bull calves. The scours-related mortality rate among the heifer calves, which were still being fed the Land O'Lakes product, remained higher than normal.

J & J sent a sample of the milk replacer, as well as two fecal samples from sick calves, for testing at a nearby laboratory. The milk replacer samples tested positive for non-pathogenic staphylococcus and streptococcus. Brad Brudevold, J & J's nutrition expert, testified that these organisms do not cause scours. One fecal sample tested positive for cryptosporidia, which can cause scours in dairy calves, and the other was clean. Brudevold testified that despite the presence of cryptosporidia in the fecal sample, it was his opinion that the scours were caused by a nutritional problem, not by cryptosporidia.

---

[1] Scours is severe diarrhea and results in dehydration.

2

J & J sued Land O'Lakes in December 2005. The jury entered a verdict for J & J in the amount of $150,000 and Land O'Lakes appealed. After holding that the district court had abused its discretion in admitting certain business records, this Court vacated the judgment against Land O'Lakes and remanded for a new trial. After the second trial, the jury again entered a verdict in favor of J & J on its breach of the implied warranty of merchantability claim and awarded damages of $50,000, to be reduced by 40 percent for J & J's negligence.

J & J requested attorney fees of $80,744. The request included fees for time spent preparing for and conducting the first trial, as well as paralegal and attorney fees incurred during the second trial. The district court excluded most of the requested fees, including fees for the pretrial work and the first trial, and awarded J & J $13,520. Land O'Lakes appeals the jury's verdict, and J & J cross-appeals the district court's order limiting its recovery of attorney fees. Both parties request attorney fees on appeal.

## II. STANDARD OF REVIEW

District courts have "broad discretion in determining whether a witness is qualified as an expert." *Weeks v. E. Idaho Health Servs.*, 143 Idaho 834, 837, 153 P.3d 1180, 1183 (2007) (quoting *Warren v. Sharp,* 139 Idaho 599, 605, 83 P.3d 773, 779 (2003)). Determining whether expert testimony is admissible "is also a matter committed to the discretion of the trial court and will not be overturned absent an abuse of that discretion." *Weeks*, 143 Idaho at 837, 153 P.3d at 1183 (citing *Athay v. Stacey,* 142 Idaho 360, 366, 128 P.3d 897, 903 (2005)). "Error may not be predicated upon a ruling which admits or excludes evidence unless the ruling is a manifest abuse of the trial court's discretion and a substantial right of the party is affected." *Burgess v. Salmon River Canal Co., Ltd.*, 127 Idaho 565, 574, 903 P.2d 730, 739 (1995) (citing I.R.E. 103; I.R.C.P. 61; *Hake v. DeLane,* 117 Idaho 1058, 1065, 793 P.2d 1230, 1237 (1990)).

We will not set aside a jury verdict on appeal if it is supported by substantial and competent evidence. *Mackay v. Four Rivers Packing Co.*, 151 Idaho 388, 391, 257 P.3d 755, 758 (2011). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Uhl v. Ballard Med. Prods., Inc.,* 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003) (citing *Hughen v. Highland Estates,* 137 Idaho 349, 351, 48 P.3d 1238, 1240 (2002)). However, substantial evidence does not mean uncontradicted evidence. *VFP VC v. Dakota Co.*, 141 Idaho 326, 335, 109 P.3d 714, 723 (2005) (citing *Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 736, 518 P.2d 1194, 1198 (1974)). "[W]hen reviewing a jury verdict on appeal the

3

evidence adduced at trial is construed in a light most favorable to the party who prevailed at trial. . . ." *Garrett Freightlines, Inc. v. Bannock Paving Co., Inc.,* 112 Idaho 722, 726, 735 P.2d 1033, 1037 (1987).

A district court's "calculation of reasonable attorney fees is reviewed for an abuse of discretion." *Lee v. Nickerson*, 146 Idaho 5, 10, 189 P.3d 467, 472 (2008) (citation omitted). "The party opposing the award bears the burden of demonstrating that the trial court abused its discretion." *Griffith v. Clear Lakes Trout Co.*, 146 Idaho 613, 622, 200 P.3d 1162, 1171 (citing *Lettunich v. Lettunich,* 145 Idaho 746, 749, 185 P.3d 258, 261 (2008)).

### III. ANALYSIS

After the second trial, Land O'Lakes moved for judgment notwithstanding the verdict or, alternatively, for a new trial. The district court denied the motion, but Land O'Lakes does not expressly appeal that denial; rather, it sets forth as the issues on appeal some of the individual errors it previously claimed as grounds for its motion, along with an evidentiary issue. We have held that "[i]t is the duty of the appellant to list the issues on appeal for this Court to review." *Andersen v. Prof. Escrow Servs., Inc.*, 141 Idaho 743, 746, 118 P.3d 75, 78 (2005) (citing *Everhart v. Wash. Cnty. Road & Bridge Dep't,* 130 Idaho 273, 274, 939 P.2d 849, 850 (1997)). Further, "[t]his Court has consistently followed the rule that it 'will not review the actions of a trial court, unless the action has been listed as an issue on appeal, especially where no authorities are cited and no argument is contained in the appellate briefs.'" *Andersen*, 141 Idaho at 746, 118 P.3d at 78 (quoting *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 93, 803 P.2d 993, 999 (1991)). Therefore, Land O'Lakes's appeal is treated as an appeal from a judgment entered on a jury verdict rather than an appeal from the district court's denial of its motion for JNOV or new trial.

**A. Land O'Lakes waived the issue of whether the district court abused its discretion in permitting J & J's expert to testify.**

We first address Land O'Lakes's contention that Brudevold was not timely disclosed as an expert witness. We have consistently stated that if "issues on appeal are not supported by propositions of law, authority, or argument, they will not be considered. . . . A party waives an issue cited on appeal if either authority or argument is lacking, not just if both are lacking." *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 16, 175 P.3d 172, 178 (2007) (ellipsis original) (quoting *Anson v. Les Bois Race Track, Inc.,* 130 Idaho 303, 304, 939 P.2d 1382, 1383 (1997)).

4

While Land O'Lakes mentions the issue in its briefing, it makes no argument. We therefore conclude that Land O'Lakes has waived this issue on appeal.

Land O'Lakes also argues that the district court's admission of Brudevold's testimony was an abuse of discretion. Land O'Lakes contends that J & J failed to demonstrate Brudevold's qualifications as an expert, failed to show a scientific basis for Brudevold's opinion testimony, and failed to demonstrate substantial similarity between the scours problem on Brudevold's ranch and the problem at J & J.

We decline to consider these claims because Land O'Lakes has not demonstrated that a substantial right has been affected. The Idaho Rules of Evidence provide that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." I.R.E. 103(a). Similarly, under the Rules of Civil Procedure, "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." I.R.C.P. 61.[2] Thus, this Court has held that in cases where "a trial court errs in the admission or exclusion of evidence, we will grant a new trial only if the error affected a substantial right." *State ex rel. Winder v. Canyon Vista Family Ltd. P'ship*, 148 Idaho 718, 726, 228 P.3d 985, 993 (2010) (citing I.R.E. 103; I.R.C.P. 61; *Burgess v. Salmon River Canal Co., Ltd.,* 127 Idaho 565, 574, 903 P.2d 730, 739 (1995)).

Issues on appeal are not considered unless they are properly supported by both authority and argument. *Gem State Ins.*, 145 Idaho at 16, 175 P.3d at 178 (citation omitted). Consequently, because an appellant can only prevail if the claimed error affected a substantial right, the appellant must present some argument that a substantial right was implicated. We have previously applied this rule in the context of reviewing other trial court decisions for an abuse of discretion.[3] We hold that when appealing from an evidentiary ruling reviewed for abuse of

---

[2] I.R.C.P. 61 states in its entirety:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

[3] *See, e.g.*, *Houston v. Whittier*, 147 Idaho 900, 904, 216 P.3d 1272, 1276 (2009) (holding that where "[d]efendant has not argued any prejudice" this Court need not consider whether the district court abused its discretion in refusing to strike a reply memorandum as untimely); *Kuhn v. Coldwell Banker Landmark, Inc.*, 150 Idaho 240, 250, 245 P.3d 992, 1002 (2010) (holding that even if district court's failure to give statute of frauds instruction was error, it was harmless because appellants failed "to demonstrate how the failure to instruct on the statute of frauds affected their substantial rights"); *Taylor v. AIA Servs. Corp.*, 151 Idaho 552, 573, 261 P.3d 829, 850 (2011) (holding that even if

discretion, the appellant must demonstrate both the trial court's abuse of discretion and that the error affected a substantial right.

In this case, Land O'Lakes argues that the district court abused its discretion when it permitted Brudevold to testify. However, because it presents no argument that the error affected a substantial right, it has waived the issue.

**B. The jury's verdict is supported by substantial and competent evidence.**

Land O'Lakes argues that the verdict was not supported by substantial and competent evidence. Land O'Lakes contends that J & J failed to prove liability because it did not exclude other reasonable causes of the scours in its calves and failed to prove damages to a reasonable degree of certainty. We disagree.

1. The jury's finding that J & J excluded other reasonably likely causes of its injury is supported by substantial and competent evidence.

When a products liability claim is based on circumstantial evidence, the plaintiff has the burden of proof to show "that the product malfunctioned, and that there are no other reasonably likely causes of the malfunction." *Murray v. Farmers Ins. Co.*, 118 Idaho 224, 227, 796 P.2d 101, 104 (1990). The plaintiff is not required to "exclude every possible cause but only reasonably likely causes." *Farmer v. Int'l Harvester Co.*, 97 Idaho 742, 749, 553 P.2d 1306, 1313 (1976) (citations omitted). However, the plaintiff's burden requires more than "merely proving the fact of the occurrence of an accident." *Id.*

Where the question is the "sufficiency of the evidence, 'the record must be reviewed to determine whether there is competent evidence to sustain the verdict; and if the litigant's case is one based on circumstantial evidence, whether such circumstantial evidence and reasonable inferences to be derived from the circumstantial evidence sustain the verdict.'" *Phillips v. Erhart*, 151 Idaho 100, 103, 254 P.3d 1, 4 (2011) (quoting *Henderson v. Cominco Am., Inc.,* 95 Idaho 690, 696, 518 P.2d 873, 879 (1973)). While the verdict may not be based upon conjecture, "[c]onflicts in the evidence and conflicts in the conclusions to be reached from the evidence remain questions for the trier of facts." *Phillips,* 151 Idaho at 103, 254 P.3d at 4. Therefore, when a jury verdict is supported by substantial and competent evidence, "both the trial court and this Court are bound by the jury's verdict." *Ross v. Coleman Co., Inc.*, 114 Idaho 817, 821, 761

---

witnesses were not timely disclosed, appellant had "not demonstrated that he suffered any prejudice," and therefore any error was harmless).

P.2d 1169, 1173 (1988) (citations omitted). As noted, when this Court reviews a jury verdict on appeal, "the evidence adduced at trial is construed in a light most favorable to the party who prevailed at trial." *Garrett Freightlines,* 112 Idaho at 726, 735 P.2d at 1037. Thus, if the evidence is such that a reasonable fact finder, considering all relevant evidence in the light most favorable to J & J, could accept it to support the jury's verdict, the verdict must be upheld.

We hold that there is evidence from which a reasonable jury could find that there are no other reasonably likely causes of J & J's damages. First, Hurtado testified that he knew there were several potential causes of scours in calves. He also testified that he had eliminated all of the other possible causes:

> **Q.** [direct] How do you know it was the milk?
>
> . . . .
>
> **A**. I knew it was the milk because when we had all this [sic] dead calves, I looked for everything and see what the problem was. We went inside where they mixed the milk, checked the temperature, see if everything was clean. We washed bottles in between. We changed gloves in between. We did everything. And I could not believe it was the milk, so I thought it can't be the milk. I have been using this milk for a long time. There is no way. Well, finally, I thought I'm going to change the milk. And I knew when I bought the skim milk from the government I could not give it to the heifers, because when I bought it, the skim milk is supposed to be only for bulls. So I was afraid if I feed it to the heifers, I didn't know what could happen because it was the government give us that milk. So I thought, well, whatever happens now I'm losing them anyway. So I feed them the bull calf skim milk and everything stopped. If you, like a month later or longer, the calves still continued dying is because they were sick. They were already sick. Once the calf got sick, it's pretty hard to get them back on their feet, get them healthy. So not the day -- the day I started feeding that skim milk, that doesn't mean that day they got better. It takes time. The ones already sick, some you can't do anything about it and they continue to die. But the new ones, they got the new milk and that skim milk, they didn't get sick.

Second, J & J's expert, Brad Brudevold, offered an opinion that cryptosporidia were not the cause of the scours:

> **A.** [Responding to cross-examination] . . . Cryptosporidia is going to be found in every fecal sample that you ever pull. I challenge any vet to pull, go to a calf ranch and pull a fecal sample and not at least be able to grow cryptosporidia. But is it at a high enough level to where it's going to cause scours? And I think if we look at the results, it's not.
>
> . . . .
>
> **Q.** Pardon me, cryptosporidia present, no other pathogens. Now where in there does it tell you that there is some level of cryptosporidia that would allow you to

7

draw the conclusion that the cryptosporidia present in this case was not a problem?

**A.** Because the second fecal sample, the second fecal sample was negative. As I'm looking at it right now, the second fecal sample was negative for crypto. The first sample they were able to grow some crypto, but to me in my experience crypto is just background noise.

**Q.** Crypto is just background noise?

**A.** Yep, in a, quote, lab test, fecal lab test on a calf ranch, yep.

. . . .

**Q.** So we've got feces that has cryptosporidiosis that was a known cause?

**A.** One fecal sample that did.

**Q.** . . . And then we've got a milk replacer sample that was clean, right?

**A.** Correct.

**Q.** Now based upon that information, you drew the conclusion that it couldn't be the cryptosporidia, it had to be the milk replacer that was the problem, correct?

**A.** No. I think the conclusion I drew was that it was a nutritional issue.

**Q.** Okay. But the milk replacer, there was nothing wrong with the milk replacer in terms of bacterial problems. You've got a [sic] feces that causes, is known to cause scours in calves, and you ignore the evidence of cryptosporidiosis and say, well, we've got to jump to this conclusion that it was a nutritional problem; is that correct?

**A.** No.

**Q.** Then what is correct?

**A.** Well what's correct was that I had one fecal sample that was negative, one that was positive, and a milk replacer that was negative. And my conclusion -- I think there was a timeline involved in this also that by the time we got the lab tests back, Jesus had already taken the matter into his own hands and switched to another, another milk replacer and the problem went away. And so crypto just didn't go away. I mean, if it was in fact causing the issue, it didn't just go away.

. . . .

**Q.** [re-direct] If it was a crypto problem and you just change the milk replacer, that would not have changed the result, would it?

**A.** I don't believe it would have changed it that fast.

Third, Brudevold testified that he was feeding his calves the same Land O'Lakes milk replacer that J & J was using and had a similar scours problem that also resolved when he stopped using the Land O'Lakes product:

**Q.** [direct] . . . Did you have this scouring problem at the same time on your calf ranch that you saw on the J & J Calf Ranch?

. . . .

THE WITNESS: Yes.

. . . .

**Q.** Who made it?

8

**A.** Land O'Lakes.

**Q.** And was it 20-20 milk replacer?

**A.** 20/20, All Natural Non Medicated.

**Q.** And did you see what milk replacer [Hurtado] was feeding?

**A.** Same, Land O'Lakes 20/20 All Natural Non Medicated.

**Q.** Same time?

**A.** Yes, sir.

. . . .

**Q.** (By Mr. DeHaan) And so what did you do on your calf ranch?

**A.** I switched to the government subsidized Walco manufactured milk replacer.

**Q.** And why did you make that decision?

**A.** Because I saw what it did for J & J Calf Ranch.

**Q.** What did you see?

**A.** My calves hadn't been as sick as long and within two feedings the scours were basically gone**.**

In addition to this evidence, the jury was instructed on J & J's burden of proof with respect to other reasonably likely causes of J & J's losses:

### INSTRUCTION NO. 16

Plaintiffs may rely upon circumstantial evidence and/or the elimination of other likely causes by satisfactory evidence to prove their case. Their case may be proved by direct or circumstantial evidence of a malfunction of the product. **Included in the Plaintiffs' burden of proof is a requirement that the Plaintiffs negate other reasonable causes of the death or illness of the dairy calves**.

We have held that we "must presume that the jury followed the jury instructions in arriving at their verdict." *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 335, 233 P.3d 1221, 1257 (2010) (citing *Boll v. State Farm Mut. Auto. Ins. Co.,* 140 Idaho 334, 341, 92 P.3d 1081, 1088 (2004)). Therefore, we presume that the jury was aware of and properly considered J & J's burden of proof.

In this case, the jury had evidence of other reasonably likely causes of the scours problem as well as J & J's evidence offered to exclude those other causes. When viewed in the light most favorable to J & J and presuming the jury followed the instructions, the record contains sufficient, though conflicting, evidence from which the jury could have found that J & J met its burden regarding the exclusion of other reasonable causes of its injury. We therefore hold that the jury's finding is supported by substantial and competent evidence.

2. The jury's award of damages is supported by substantial and competent evidence.

The "exact amount" of a plaintiff's claimed damages does not have to be proved, but there must be enough proof to show the amount to a reasonable certainty and remove the amount from the realm of speculation. *Trilogy Network Sys., Inc. v. Johnson*, 144 Idaho 844, 846, 172 P.3d 1119, 1121 (2007). When personal property is totally destroyed, the measure of damages "is the value of the property at the time and place of its destruction." *Skaggs Drug Ctrs., Inc. v. City of Idaho Falls*, 90 Idaho 1, 10, 407 P.2d 695, 699 (1965) (citation omitted). This rule applies where the destroyed personal property is livestock. *See Gill v. Brown*, 107 Idaho 1137, 1138, 695 P.2d 1276, 1277 (Ct. App. 1985).

In proving damages, "the owner of property is qualified to testify to its value." *Empire Lumber Co. v. Thermal-Dynamic Towers, Inc.*, 132 Idaho 295, 306, 971 P.2d 1119, 1130 (1998). (citing *Pocatello Auto Color, Inc. v. Akzo Coatings, Inc.,* 127 Idaho 41, 43, 896 P.2d 949, 951 (1995)). Further, "[t]he owner's failure or inability to explain the basis for the value given may affect the weight to be given the testimony, but it does not disqualify the owner's opinion." *Pocatello Auto Color, Inc.* 127 Idaho at 43, 896 P.2d at 951. In that case, the plaintiff's testimony as to the fair market value of her company was the basis for the jury's verdict in her favor. *Id.* The defendant appealed the verdict, contending that the trial court abused its discretion in admitting plaintiff's testimony because she admitted on cross-examination that she did not actually know the fair market value of the business. *Id.* We disagreed, holding that it was "for the jury to evaluate whether the weight of [the plaintiff's] testimony was affected by her admissions on cross-examination." *Id.* Thus, even if an owner fails to explain how an estimate of losses was calculated, or later contradicts that estimate, the jury may nonetheless rely on the evidence.

Here, through Hurtado's testimony, J & J offered evidence that each calf was worth $1000:

> **Q.** [direct] And do you have an opinion as to what these dead calves were worth?
> **A.** Yes, about a thousand bucks.
> . . . .
> **Q.** . . . So you have evaluated the value of these heifer calves at $1,000?
> **A.** Yes.
> **Q.** And is that your best opinion as to what it would cost to buy them on the open market?
> **A.** Yes.

10

Hurtado further testified that J & J lost 130 calves as a result of the scours problem, which was higher than the expected rate:

> **Q.** [direct] And did you calculate the number of calves that died as a result of this problem?
> **A.** It was 130.
> . . . .
>
> **Q.** (By Mr. DeHaan) How did you calculate that number?
> **A.** The numbers of calves coming in a month and I subtract the ones that die.
> **Q.** And how did you physically accomplish that?
> **A.** By the ear tags my guys pulled, cut it and put in the bucket, and I counted them at the end of the month.
> . . . .
>
> **Q.** . . . does the 130 head include what would have died normally?
> **A.** No. If I remember, it was more than 130.
> **Q.** So you deducted the regular three to five percent?
> **A.** Yes.
> **Q.** And this is the excessive death loss?
> **A.** Yes.

Other J & J employees working at the calf farm during the time of the scours problem offered different estimates of how many calves died. Luis Lugo, a former J & J employee, testified that 10 to 12 calves died per day for a month, which would be over 300 deaths. Another employee, Claudio Beltran, testified that as many as 450 calves died.

As with liability, the jury was instructed regarding J & J's burden to prove its damages:

### INSTRUCTION NO. 14

. . .

The Plaintiffs have the burden of proving each of the following:

    . . .

    4. The amount of damages sustained by the Plaintiffs.

### INSTRUCTION NO. 17

If you decide the Plaintiffs are entitled to recover from Land O'Lakes, you must determine the amount of money that will reasonable and fairly compensate the Plaintiffs for any of the following elements of damages proved to be proximately caused by Land O'Lakes' negligence or breach of an implied warranty of merchantability.

    1. The reasonable cost of necessary care and treatment to the calves that were damaged by the milk replacer but survived.

    2. The fair market value at the time of death of the calves that died as a result of Land O'Lakes' wrongful conduct.

Whether any of these elements of damage has been proved is for you to determine.

Hurtado, as the owner of the calves, was competent to testify regarding the fair market value of the dead calves. Further, as in *Pocatello Auto Color*, it was for the jury to determine the weight of the conflicting evidence and whether it was sufficient to meet the burden of proof. Viewing the evidence in the light most favorable to J & J and assuming the jury followed the instructions, we hold that there is sufficient, though conflicting, evidence from which the jury could have found that J & J met its burden to prove its damages. Therefore, we affirm the judgment of the district court.

**C. The trial court's award of attorney fees for the trial phase was proper.**

On cross-appeal, J & J argues that the district court abused its discretion by limiting its award of fees to those incurred for work on the second trial, excluding work prior to and during the first trial.

"Abuse of discretion is determined by a three part test which asks whether the district court '(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason.'" *Lee v. Nickerson*, 146 Idaho 5, 10, 189 P.3d 467, 472 (2008) (citation omitted). When calculating attorney fees, the "district court must consider the applicable factors set forth in I.R.C.P. 54(e)(3) and may consider any other factor that the court deems appropriate." *Id.* at 10-11, 189 P.3d at 472-73 (citing *Parsons v. Mut. of Enumclaw Ins. Co.,* 143 Idaho 743, 747, 152 P.3d 614, 618 (2007)). The factors contained within Rule 54(e)(3) are:

(A) The time and labor required.
(B) The novelty and difficulty of the questions.
(C) The skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law.
(D) The prevailing charges for like work.
(E) Whether the fee is fixed or contingent.
(F) The time limitations imposed by the client or the circumstances of the case.
(G) The amount involved and the results obtained.
(H) The undesirability of the case.
(I) The nature and length of the professional relationship with the client.
(J) Awards in similar cases.
(K) The reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case.
(L) Any other factor which the court deems appropriate in the particular case.

While the district court does not have to "address all of the I.R.C.P. 54(e)(3) factors in writing, the record must clearly indicate the court considered all of the factors." *Lee*, 146 Idaho at 11, 189 P.3d at 473.

J & J requested attorney fees for four phases of the litigation: pretrial preparation, the first trial, the first appeal,[4] and the second trial. The total amount requested was $80,744. The district court denied fees for the pretrial work and the first trial, citing several bases for its decision: 1) the district court in the first trial denied attorney fees and that decision was not reversed or vacated on remand; 2) J & J's attorney handled the first case on a contingency basis and there was no recovery because the judgment was vacated on appeal; 3) much of the pretrial award was based upon claims unrelated to the action against Land O'Lakes; and 4) the accuracy of the billing ledger was in doubt. J & J argues that the district court should have considered both trials as a single piece of litigation and awarded fees based on the entire course of litigation.[5]

In this case, the district court recognized its discretion and applied the proper legal standard. In fact, the court considered each factor of 54(e)(3) on the record and applied its discretion consistently as to each. In its memorandum opinion, the district court further explained the reasons behind each part of its calculation of fees. Therefore, we hold that the district court did not abuse its discretion in its calculation and award of attorney fees.

**D. Attorney Fees on Appeal.**

Both parties request attorney fees pursuant to I.C. § 12-120(3). However, only the prevailing party is entitled to attorney fees on appeal under that section. Where both parties prevail in part on appeal, this Court does not award attorney fees to either party. *Keller v. Inland Metals All Weather Conditioning, Inc.*, 139 Idaho 233, 241, 76 P.3d 977, 985 (2003).

Because we affirm the district court's judgment as to both the issues appealed and the issue cross-appealed, each party has prevailed only in part. Therefore, neither party is entitled to attorney fees or costs on appeal.

---

[4] While this category appears in the motion and supporting affidavit, the amount is $0.00 because J & J did not prevail on appeal after the first trial.

[5] J & J relies on *Griffith v. Clear Lakes Trout Co.*, 146 Idaho 613, 200 P.3d 1162 (2009), for this proposition. In that case, this Court agreed with the trial court's decision to determine attorney fees "as a whole" rather than on each phase of litigation that had been tried, remanded, and tried again. *Id.* at 623, 200 P.3d at 1172. However, we did not hold that the district court's discretion was constrained by this rule, only that the district court had applied the proper legal standard and reached its decision by an exercise of reason and thus, its calculations were "reasonable under the circumstances." *Id.*

## IV. CONCLUSION

We hold that Land O'Lakes has waived the issues regarding expert testimony. We affirm the jury verdict because it was supported by substantial competent evidence and affirm the district court's award of attorney fees because it properly exercised its discretion. We do not award attorney fees or costs on appeal.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.