# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 41589

POCATELLO HOSPITAL, LLC, dba
PORTNEUF MEDICAL CENTER, LLC,

    Plaintiff-Respondent,

v.

QUAIL RIDGE MEDICAL INVESTOR,
LLC and FORREST L. PRESTON, an
individual,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, December 2014 Term

2014 Opinion No. 139

Filed: December 18, 2014

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Sixth Judicial District of the
State of Idaho, Bannock County. Hon. Robert C. Naftz, District Judge.

The judgment is <u>affirmed</u>. Attorney's fees and costs on appeal are
<u>awarded</u> to respondent.

Beard St. Clair Gaffney, PA, Idaho Falls, attorneys for appellant
Quail Ridge Medical Investors, LLC and Forrest Preston. John M.
Avondet argued.

Merrill & Merrill, Chartered, Pocatello, attorneys for respondents
Pocatello Hospital, LLC d/b/a/ Portneuf Medical Centers, LLC.
R. William Hancock, Jr. argued.

---

WALTERS, J. *pro tem*

    This appeal stems from a 1983 Ground Lease of 4.25 acres of property in Pocatello, Idaho, which Quail Ridge Medical Investors, LLC (Quail Ridge) leases from Pocatello Hospital, LLC d/b/a Portneuf Medical Centers, LLC (PMC). This is the second appeal that has reached this Court related to payment of rent under the Ground Lease for the period of 2010 to 2012. Previously, Quail Ridge appealed a declaratory judgment entered by the district court which found PMC was entitled to an adjustment in the annual rent owed by Quail Ridge from $9,562.50 annually to $148,500 annually, and that Quail Ridge was obligated to pay PMC

1

$416,812.50 in rent for the period at issue. This Court affirmed the court's declaratory judgment. While the first appeal was pending, PMC filed a new action seeking payment of the adjusted rents. In the second action, the district court found on summary judgment that Quail Ridge breached the Ground Lease by failing to pay the adjusted rents. Quail Ridge appeals, arguing the breach of contract and breach of guarantee claims are barred under *res judicata*. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the prior appeal, this Court summarized the relevant facts of this dispute as follows:

> Despite several transfers of interests in the property, the relationship of the parties is both undisputed and straightforward. PMC owns 4.25 acres of property in Pocatello. Quail Ridge is leasing the real property from PMC and is the owner of the building on the leased land. PMC is the lessor and Quail Ridge is the lessee, each as successors in interest, under the Ground Lease Agreement of 1983 (the Lease).
>
> In 1983, Intermountain Health Care, Inc. (IHC) and Sterling Development Co. (Sterling) entered into the Lease whereby IHC leased the subject real property, as Lessor, to Sterling, as Lessee.[1] The Lease provides that rent is to be paid annually and that the annual rent is to be calculated as 15 percent of the value of the land. The Lease provided that the land was to be assigned a value of $15,000 per acre (for a total of $9,562.50 per year) for the first three years.
>
> Critically, section 1.3(b) of the Lease provides for periodic adjustments to the rent:
>
>> [1.3](b) <u>Adjustments Based on Property Value</u>. The annual net rental as set forth above shall be adjusted every three (3) years beginning on the Commencement Date of this Lease, referred to below as the rental adjustment date.
>>
>> The parties' written agreement within ninety (90) days before the applicable rent adjustment date shall be a conclusive determination between the parties of the fair market value for the period to which the adjustment applies. If the parties have not so agreed by the applicable rent adjustment date, the determination shall be made as in the paragraph on Arbitration in Article 13.
>>
>> The rent as adjusted shall be equal to fifteen percent (15%) percent [sic] of the fair market value of the leased land, exclusive of the improvements on the premises. Determination of fair market value shall be based on the highest and best use of the land on the applicable rent adjustment date without taking the leasehold into account. The determination shall take into account the parties' agreement that the initial minimum rent is the above-stated percentage applied to a fair market value of Fifteen Thousand and

---

[1] The Lease was for a term of thirty years with one option to extend the term by ten years, this option was exercised and assigned to Quail Ridge. Thus, the Lease will be in effect until January 31, 2023.

No/100 Dollars ($15,000.00) per acre and shall also take into account any determinations of market value made under this lease for the purpose of adjustments for periods preceding the applicable rent adjustment date.

If the determination of adjusted rent is made after the applicable rent adjustment date, lessee shall continue to pay rent at the rate applicable to the preceding period until the adjusted rate is determined. The party indebted shall, promptly after the determination, pay any difference for the period affected by the adjustment.

Thus, under the terms of the Lease, there were to be adjustments to the rent in 1986, 1989, 1992, 1995, 1998, 2001, 2004, 2007, and 2010. However, IHC and Sterling never adjusted the rent.

In 1996, Pocatello Medical Investors (PMI) became a subtenant of Sterling, with an option to purchase, and began operating the building located on the leasehold. In connection with this sublease, IHC (as Landlord), Sterling (as Tenant), and PMI (as Subtenant), entered into a Landlord Consent and Estoppel Certificate (1996 Estoppel Certificate). The 1996 Estoppel Certificate incorporated the Lease and provided that the rent was "currently" $9,562.50 per annum and that "[u]nder Section 1.3(b) of the Lease, the rent shall be adjusted on the next rent adjustment date, March 1, 1998." Despite this language, IHC did not subsequently seek a rent adjustment.

Around 2001, Sterling agreed to sell the building located on the leasehold to PMI. In order to facilitate this transaction, PMI created a new entity, Quail Ridge. Quail Ridge purchased the building from Sterling and assumed the Lease with IHC. Quail Ridge also assumed a $2.8 million dollar loan made by the Public Employee Retirement System of Idaho (PERSI) to Sterling in 1996 that was secured by a deed of trust to the building on the leased property. PMI became the subtenant of Quail Ridge.

In connection with this change, IHC[2] (as Landlord), Sterling (as Tenant), Quail Ridge (as Successor Tenant), and PMI (as Subtenant) all signed another Landlord Consent and Estoppel Certificate (hereinafter 2001 Estoppel Certificate) which was acknowledged and consented to by PERSI. The 2001 Estoppel Certificate was drafted by Richard Faulkner, who was counsel for Quail Ridge at the time. The 2001 Estoppel Certificate stated that the Lease was in full force and effect and that rent was $9,562.50 per annum. Also included in the 2001 Estoppel Certificate was a personal guarantee by Forrest Preston, a principal of Quail Ridge, for "payment and performance of any and all obligations" of Quail Ridge and PMI under the Lease.

In February 2009, shortly after PMC acquired the property and assumed IHC's rights and duties under the Lease, PMC began to investigate the possibility of a rent adjustment pursuant to section 1.3(b) of the Lease and had the 4.25 acres

---

[2] IHC had since changed hands, and IHC Health Services, Inc., was the successor in interest under the Lease as the Lessor. Because there was no substantive change with this transfer, IHC Health Services will also be referred to as IHC.

appraised. In October, 2009, PMC notified Quail Ridge of its intention to adjust the annual rent pursuant to the Lease. After the parties failed to reach an agreement, PMC filed its complaint alleging breach of contract and seeking a rent adjustment for 2007 and 2010. The parties waived the mandatory arbitration provision of the Lease and asked the court to determine the "fair market value" of the land to determine the rent obligation. The parties then filed cross-motions for summary judgment; both motions were denied.

PMC subsequently amended its complaint, asserting a claim for declaratory relief regarding the parties' rights under section 1.3(b) of the Lease. Prior to the trial, the district court concluded, as a matter of law, that the 2001 Estoppel Certificate was unambiguous, but that portions of section 1.3(b) of the Lease were ambiguous and warranted admission and consideration of extrinsic evidence regarding the intent of, and course of dealing between, the parties. A two day court trial was held in May of 2012. At the close of PMC's case in chief, Quail Ridge moved to dismiss PMC's breach of contract claim. PMC did not oppose the motion and the motion was granted. Thus, the only issue before the district court for decision was PMC's declaratory judgment claim.

In October 2012, the district court issued its decision. The district court concluded that section 1.3(b) of the Lease was ambiguous in part but that there was no credible evidence to aid it in the interpretation of the ambiguous language. As a result, the district court applied the current fair market value of the land to determine the annual rent. The district court concluded that the value of the land in 2010 was $232,941.18 per acre, making the annual rent $148,500 per year for the three year period of 2010, 2011, and 2012. The district court further found that PMC was not entitled to retroactive modification of the rent in 2007 because PMC failed to make a timely request for modification under the terms of the Lease.

In reaching these conclusions, the district court decided that the 2001 Estoppel Certificate did not modify the terms of the Lease and that PMC did not waive the rent adjustment provision in section 1.3(b) of the Lease. Based upon these findings, the district court considered the rent due per year, $148,500, less the $9,562.50 per year that Quail Ridge had paid for 2010, 2011, and 2012, and determined Quail Ridge was obligated to pay PMC a total amount of $416,812.50. The district court entered its Declaratory Judgment on November 26, 2012. Quail Ridge timely appealed.

*Pocatello Hosp., LLC v. Quail Ridge Med. Investor, LLC*, 156 Idaho 709, 712–14, 330 P.3d 1067, 1070–72 (2014) (*PMC I* or "prior action"). In *PMC I*, this Court affirmed the district court's declaratory judgment and also found that PMC was entitled to attorney fees and costs on appeal. *Id.* at 721–22, 330 P.3d at 1079–80.

On December 12, 2012, while the appeal was pending in *PMC I*, PMC filed the instant action against Quail Ridge and its principal owner and personal guarantor on the Ground Lease, Forrest Preston (Preston) (*PMC II* or "instant action"). Preston was not a party to *PMC I*. The

4

complaint in *PMC II* alleged breach of contract and breach of personal guarantee. PMC sought from Quail Ridge payment of adjusted rents for the period of 2010 to 2012, given that this amount had been determined by the district court in *PMC I*. On January 29, 2013, Quail Ridge and Preston (collectively Quail Ridge) jointly filed an answer. Shortly thereafter, Quail Ridge moved the district court to stay *PMC II* pending the outcome of its appeal in *PMC I*. PMC opposed the stay, and the district court heard argument on March 4, 2013. The district court stayed *PMC II*, but on the express condition that Quail Ridge post a bond in the amount established by the declaratory judgment entered in *PMC I*, $416,812.50.

Quail Ridge ultimately did not post the bond as ordered. On June 13, 2011, more than three months after the district court ordered the stay and related bond, PMC moved the court to compel Quail Ridge to immediately post a bond, or in the alternative, to lift the stay and allow *PMC II* to proceed. A hearing on PMC's motion to compel was held on July 8, 2013, wherein Quail Ridge was ordered to post the bond by a date and time certain or the stay would be automatically lifted. PMC was awarded attorney fees associated with bringing the motion to compel. On July 11, 2013, the district court entered a written minute entry and order consistent with its rulings from the bench. Despite the two-week extension, Quail Ridge failed to post bond by the date ordered and the stay was automatically lifted after 5:00 p.m. on July 22, 2013.

On September 5, 2013, PMC filed a motion for summary judgment on both issues raised in its complaint, breach of contract and breach of personal guarantee. Quail Ridge filed a cross-motion for summary judgment on September 23, 2013. The district court heard oral argument on the parties' motions on October 21, 2013, and at the conclusion of the argument, granted PMC's motion for summary judgment and denied Quail Ridge's cross-motion for summary judgment. On October 22, 2013, the district court signed a written judgment consistent with its earlier ruling from the bench, which was entered on October 23, 2013.

On November 7, 2013, Quail Ridge timely filed the instant appeal. On the same date, PMC filed a motion with the district court seeking attorney fees and costs in connection with *PMC II*, which Quail Ridge opposed. A hearing regarding the request for fees and costs was held on December 16, 2013, and the district court took the matter under advisement. On January 7, 2014, the district court issued a written order regarding attorney fees, wherein it granted PMC, as the prevailing party, costs and fees in the total sum of $16,830.93. On the same date, the district

5

court entered a final judgment in favor of PMC in the amount of $416,812.50, plus interest of $45,221.30 for a total of $462,033.80. The final judgment was filed on January 8, 2014.

Given that PMC's breach of contract claim was dismissed in *PMC I*, Quail Ridge appeals on *res judicata* grounds, arguing that the doctrine of claim preclusion bars the breach of contract claim and that issue preclusion bars the breach of guarantee claim against Preston.

## II. ISSUES ON APPEAL

1.    Whether the district court erred in granting PMC's motion for summary judgment.

2.    Whether the district court erred in awarding attorney fees and costs to PMC.

3.    Whether either party is entitled to attorney fees and costs on appeal.

## III. STANDARD OF REVIEW

> An appeal from summary judgment is reviewed under the same standard a district court uses when granting a motion for summary judgment. *A & J Const. Co., Inc. v. Wood*, 141 Idaho 682, 684, 116 P.3d 12, 14 (2005). Under Rule 56(c) of the Idaho Rules of Civil Procedure, summary judgment is proper if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." If the evidence reveals no disputed issues of material fact, then summary judgment should be granted. *Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 718–19, 918 P.2d 583, 587–88 (1996). In making this determination, "all disputed facts are liberally construed in favor of the non-moving party." *McCoy v. Lyons*, 120 Idaho 765, 769, 820 P.2d 360, 364 (1991).

*Silicon Int'l Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 544, 314 P.3d 593, 599 (2013).

> Whether claim preclusion or issue preclusion bars relitigation between the same parties of a prior litigation is a question of law upon which this Court exercises free review. *Lohman v. Flynn,* 139 Idaho 312, 319, 78 P.3d 379, 386 (2003). *Res judicata* is an affirmative defense and the party asserting it must prove all of the essential elements by a preponderance of the evidence. *Foster v. City of St. Anthony,* 122 Idaho 883, 890, 841 P.2d 413, 420 (1992).

*Ticor Title Co. v. Stanion*, 144 Idaho 119, 122, 157 P.3d 613, 616 (2007).

## IV. ANALYSIS

**A.    The district court properly found on summary judgment that Quail Ridge and Preston are jointly and severally liable for the adjusted rent owed under the Ground Lease for the period of 2010 to 2012.**

Quail Ridge attempts to use the doctrines of issue and claim preclusion as a shield from liability in the instant action. "The doctrine of *res judicata* covers both claim preclusion (true *res judicata*) and issue preclusion (collateral estoppel)." *Ticor Title*, 144 Idaho at 123, 157

P.3d at 617 (citing *Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 805 (2002)). Claim preclusion "bars a subsequent action between the same parties upon the same claim or upon claims 'relating to the same cause of action.'" *Stoddard v. Hagadone*, 147 Idaho 186, 190, 207 P.3d 162, 166 (2009) (quoting *Hindmarsh*, 138 Idaho at 94, 57 P.3d at 805). A claim is precluded if it could have been brought in the previous action, regardless of whether it was actually brought, where "(1) the original action ended in a final judgment on the merits, (2) the present action involves the same parties as the original action, and (3) the present claim arises out of the same transaction or series as the original action." *Berkshire Invs., LLC v. Taylor*, 153 Idaho 73, 81, 278 P.3d 943, 951 (2012) (citing *Ticor Title*, 144 Idaho at 125–27, 157 P.3d at 618–20)).

Collateral estoppel, or issue preclusion, bars relitigation of an issue previously determined when:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Stoddard*, 147 Idaho at 191, 207 P.3d at 167 (quoting *Rodriguez v. Dep't of Corr.*, 136 Idaho 90, 92, 29 P.3d 401, 403 (2001)).

Quail Ridge argues that PMC already brought a breach of contract claim against it in *PMC I* seeking recovery of adjusted rents for the period of 2010 to 2012, a claim that was dismissed by the district court on motion by Quail Ridge at the close of PMC's case in chief at trial. Given that the claim was dismissed allegedly without limitation or qualification, Quail Ridge argues that PMC should be barred in the instant action by claim preclusion from re-asserting its breach of contract claim against Quail Ridge, and similarly barred by issue preclusion from bringing a breach of guarantee claim against Preston.

Quail Ridge's arguments fail for two reasons. For one, the dismissal of PMC's breach of contract claim in *PMC I* was not a final judgment. Second, even if the dismissal of the claim constituted a final judgment, the district court's clearly-articulated rationale for dismissing the claim in *PMC I* reveals that it was dismissed on ripeness grounds and without prejudice.

1. **No Final Judgment as to the Breach of Contract Claim in *PMC I***

At the conclusion of PMC's presentation of evidence in *PMC I*, Quail Ridge moved for a directed verdict on PMC's breach of contract claim. PMC did not oppose the motion and the district court granted the dismissal.

> We pause to note that, as a procedural matter, however, a judge does not render a verdict in a bench trial. Therefore, a directed verdict at the close of the plaintiff's evidence in a bench trial is inappropriate. A directed verdict is defined as "A ruling by a trial judge *taking a case from the jury* because the evidence will permit only one reasonable verdict." Black's Law Dictionary, at 1791 (10th ed. 2014) (emphasis added). The district court's decision dismissing the case therefore was properly an involuntary dismissal pursuant to I.R.C.P. 41(b). Accordingly, the standard for reviewing a dismissal pursuant to I.R.C.P. 41(b) will be applied in this appeal.

*See Spirit Ridge Mineral Springs, LLC v. Franklin Cnty.*, No. 40865, 2014 WL 5462574, at *2–3 (Idaho Oct. 29, 2014).

Idaho Rule of Civil Procedure 41(b) empowers a district court to dismiss a case after a plaintiff's presentation of the evidence at a trial without a jury:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

I.R.C.P. 41(b). In dismissing the breach of contract claim in *PMC I*, the district court failed to make findings required under Idaho Rule of Civil Procedure 52(a). Further, the district court did not enter a final judgment in the form prescribed by Rule 54(a), I.R.C.P., nor did the court certify its partial judgment on the contract claim as final as permitted by Rule 54(b), I.R.C.P. In the absence of a final judgment, *res judicata* is not applicable. *Berkshire Invs., LLC*, 153 Idaho at 81, 278 P.3d at 951.

### 2. Breach of Contract Claim in *PMC I* was not Justiciable

Even if the district court's dismissal of PMC's breach of contract claim in *PMC I* resulted in a final judgment, *res judicata* is inapplicable because the claim was not justiciable at the time it was dismissed. To comprehend the argument raised on appeal, it is necessary to appreciate how PMC's action in *PMC I* evolved from a breach of contract claim into a claim for declaratory

8

relief. This evolution was prompted by the district court's interpretation of the Ground Lease's fair market value adjustment provision. As correctly interpreted by the district court in *PMC I*, the "Adjustments Based on Property Value" provision requires any adjustment to the rent to be formally determined by an arbitrator or a court of competent jurisdiction. Without a formal adjustment to the rent establishing the parties' respective rights and obligations under the Lease, the district court reasoned that it would be impossible to ascertain whether Quail Ridge was in breach of the Ground Lease for non-payment of an otherwise unsettled amount. Thus, the district court contemplated that this formal adjustment process had to occur before either party could be found in breach of the Lease.

PMC's breach of contract action, as initially brought in *PMC I*, was filed prior to a formal adjustment process being undertaken and was premised upon Quail Ridge's refusal to pay adjusted rents after PMC provided it with an appraisal and made a demand for increased rent payments. During the pretrial stage of *PMC I*, however, the district court made its interpretation of the Lease clear. It was in response to this interpretation that PMC amended its complaint and alleged an alternative claim for declaratory relief seeking to clarify the parties' rights and obligations pursuant to the adjustment provision of the Lease. In essence, PMC's focus shifted from recovering under a breach of contract theory and instead sought to treat *PMC I* as the formal adjustment process, an approach the district court found reasonable.

At the close of PMC's case in chief, PMC's breach of contract claim was dismissed on motion by Quail Ridge. Given the sequence of events leading up to trial, as well as the district court's clearly-stated understanding of the adjustment provision, PMC did not oppose[3] the motion. From this Court's review of the record, it is abundantly clear that the district court considered the breach of contract claim not ripe until after the disputed rents had been formally adjusted. Specifically, the court stated in its November 12, 2012 Order on Form of Judgment:

> The parties' Ground Lease Agreement provides that "the party indebted shall, promptly after the determination, pay any difference for the period affected

---

[3] In conceding dismissal of its breach of contract claim in *PMC I*, counsel for PMC stated:

> I can probably stipulate on this and save a little time. I agree exactly with what [counsel for Quail Ridge] is saying. [Proving breach of contract] hasn't been our strategy in the trial. We feel that the way we have alleged the complaint, and especially with the amendment for the declaratory judgment, and then as a result of a declaratory judgment, which effectively becomes the adjustment process that we're alleging, then that adjustment process itself results in the payment of the fair market value on the property for the years 2007 to current. So we would withdraw the first count regarding a breach of contract and damages from a breach.

9

by the adjustment." Ground Lease Agreement, p. 3 § 1.3(b). Now that the determination has been made as contemplated under the Ground Lease Agreement, the Ground Lease Agreement requires "prompt" payment of the balance due under the Ground Lease Agreement. Although the Ground Lease Agreement does not define the term prompt for purpose of the parties' agreement, a failure to pay this amount in a reasonable time certainly would give rise to an action for breach of contract.

This portion of the judgment demonstrates that the district court (1) considered the breach of contract claim not justiciable at the time declaratory judgment was entered in *PMC I*, (2) intended for its entry of judgment to constitute the adjustment process, and (3) contemplated that PMC would have the right to pursue a renewed breach of contract claim should Quail Ridge fail to promptly pay the amount judicially determined for the 2010 to 2012 adjustment period.

Quail Ridge's appeal rests in large part on the district court's failure to use certain "magic words" in dismissing the breach of contract claim in *PMC I*. Specifically, Quail Ridge takes issue with the court's failure to expressly indicate whether the claim was dismissed with or without prejudice, as well as its failure to use the term unripe in describing the dismissed claim. Quail Ridge's arguments are hollow, and its reading of the district court's orders and judgment are selective and tortured. The district court expressly reserved for PMC the right to pursue a breach of contract claim should Quail Ridge fail to pay the adjusted rents declared as due and owing, which evidences that the court considered the claim not yet ripe at the time of its dismissal.

In *PMC II*, Quail Ridge argues that claim preclusion bars PMC's breach of contract claim against Quail Ridge, and that issue preclusion bars PMC's breach of guarantee claim against Preston. Both arguments are equally unavailing. This Court has long recognized ripeness as a limitation on the doctrine of *res judicata*. *See Gaige v. City of Boise*, 91 Idaho 481, 485, 425 P.2d 52, 56 (1967); *see also Duthie v. Lewiston Gun Club*, 104 Idaho 751, 754, 663 P.2d 287, 290 (1983). This case clearly falls under the ripeness limitation. Given the district court's interpretation of the Ground Lease in *PMC I*, the breach of contract claim could not ripen until the rental amount was formally adjusted, which is precisely what was accomplished through entry of judgment in *PMC I*. The district court in *PMC I* further understood, and announced to the parties, that should Quail Ridge fail to promptly pay the outstanding adjusted rents as adjudicated, a renewed breach of contract action against Quail Ridge could serve as PMC's mechanism for enforcing the declaratory judgment. The fact that PMC brought what was

10

ultimately determined a premature breach of contract claim in *PMC I* does not somehow act as a bar to bringing a subsequent action once the claim has matured and ripened for determination.

Picking up where the district court left off in *PMC I*, the court in *PMC II* understood that the breach of contract claim had ripened following the entry of declaratory judgment and Quail Ridge's failure to promptly pay the determined rents. Thus, the court in *PMC II* found on summary judgment that Quail Ridge and Preston are jointly and severally liable for the outstanding adjusted rents. This judgment is affirmed, as the material facts are undisputed.

On November 26, 2012, the district court in *PMC I* entered an Amended Declaratory Judgment declaring that the rents owed by Quail Ridge for the period in question totaled $416,812.50. Paragraph 4 of section 1.3(b) of the Ground Lease states that "[t]he party indebted shall, promptly after the [rent adjustment] determination, pay any difference for the period affected by the adjustment." On the date PMC's summary judgment motion was heard in *PMC II*, nearly eleven months had passed since the district court declared the amount due and owing. To date, Quail Ridge has not remitted payment for the adjusted rents, nearly two years after entry of judgment in *PMC I* and several months after this Court affirmed the same. This is not prompt and reasonable payment.

On appeal, Quail Ridge does not argue that any material facts are in dispute. Rather, it relies solely on *res judicata* as a shield against the breach of contract and breach of guarantee claims asserted in *PMC II*. *Res judicata* does not apply to the facts of this case. The undisputed material facts establish that Quail Ridge failed to pay the rents as adjusted and determined by the court in *PMC I*. As a result, the instant breach of contract action was brought against it. While Quail Ridge contends that PMC made a grave strategic mistake in bringing a premature breach of contract claim in *PMC I*, such an argument is meritless. PMC's breach of contract action in *PMC I* evolved into an action for declaratory relief when it became apparent that the district court considered the claim not yet ripe under the terms of the Ground Lease. Given this interpretation, and although not expressly stated, the district court dismissed PMC's breach of contract claim in *PMC I* on ripeness grounds. An unripe claim is not capable of being actually litigated and determined. To characterize this dismissal as a final judgment on the merits is incongruous with the proceedings below. While not expressly stated, dismissal in *PMC I* was clearly without prejudice, as the court expressly acknowledged the right of PMC to bring a new breach of contract action should Quail Ridge fail to promptly pay the amount determined.

11

As stated in the district court's November 12, 2012 Order on Form of Judgment:

> Therefore, because there has been no breach and the breach of contract claim was dismissed at trial, the [c]ourt will decline [PMC's] request for entry of a money judgment. Certainly if "prompt" payment is not made consistent with this Court's determination, [PMC] is entitled to avail itself of the courts in order to seek redress for this breach. However, this [c]ourt will limit its judgment to one of declaring the respective rights and obligations under the Ground Lease Agreement.

In light of these findings, Quail Ridge's arguments on appeal are specious. The district court certainly did not consider the breach of contract claim as having been actually litigated, but rather found the claim had been prematurely, but not improperly, brought. *Davidson v. Wright*, 143 Idaho 616, 620–21, 151 P.3d 812, 816–17 (2006) (noting this Court's precedent and "the court system's constitutionally based inability to adjudicate disputes before a justiciable controversy has ripened"); *Nat'l Ro-Tile Corp. v. Loomis*, 82 Idaho 65, 68, 350 P.2d 217, 219 (1960) ("judgment of nonsuit entered in the prior action did not constitute a bar to the present action"). Thus, claim preclusion does not bar the breach of contract claim against Quail Ridge.

For many of the same reasons that claim preclusion does not apply to the breach of contract claim, issue preclusion does not bar the breach of guarantee claim against Preston. Although not a party to *PMC I*, Preston executed a guarantee on June 1, 2001 which obligates him to pay the adjusted rents under the Ground Lease if Quail Ridge fails to do so. The document at issue, entitled "Guarantee of Payment and Performance," establishes, *inter alia*, that Preston, "individually, unconditionally guarantees the payment and performance of any and all obligations of [Quail Ridge]" under the Ground Lease. Prior to the trial in *PMC I*, "the district court concluded, as a matter of law, that the [guarantee] was unambiguous." *PMC I*, 156 Idaho at 714, 330 P.3d at 1072. As guarantor, Preston was in privity with Quail Ridge in *PMC I*. However, the other elements required for issue preclusion are not present in this case. Specifically, the breach of contract claim was not "actually decided" in the prior litigation because an unripe claim simply cannot be "fully and fairly litigated." Aside from asserting issue preclusion as a defensive measure, Preston does not dispute the material facts. Thus, issue preclusion does not save Preston from the district court's finding on summary judgment that he breached his guarantee, and this Court affirms the decision below.

For all of these reasons, the district court's grant of summary judgment in favor of PMC is affirmed.

**B.    The district court did not err in awarding PMC attorney fees and costs.**

"In any civil action the court may award reasonable attorney fees . . . to the prevailing party . . . when provided for by any statute or contract." I.R.C.P. 54(e)(1). Pursuant to Idaho Code section 12-121, a judge may award reasonable attorney fees to the prevailing party in any civil action. I.C. § 12-121. "An award of attorney fees under Idaho Code [section] 12-121 is not a matter of right to the prevailing party, but is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009); *see also* I.R.C.P. 54(e)(1) ("attorney fees under section 12-121, Idaho Code, may be awarded by the court only when it finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation"). The district court's award of attorney fees pursuant to Idaho Code section 12-121 and I.R.C.P. 54(e)(1) and its determination as to whether an action was brought or defended frivolously, unreasonably, or without foundation "will not be disturbed absent an abuse of discretion." *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 629, 329 P.3d 1072, 1077 (2014).

I.R.C.P. 54(e)(3) requires that the court consider numerous factors in determining the amount of attorney fees in a civil action. I.R.C.P. 54(e)(3). "While the district court does not have to 'address all of the I.R.C.P. 54(e)(3) factors in writing, the record must clearly indicate the court considered all of the factors.'" *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 23, 278 P.3d 415, 425 (2012) (quoting *Lee v. Nickerson*, 146 Idaho 5, 11, 189 P.3d 467, 473 (2008)).

In this case, the district court awarded PMC $15,599.75 in attorney fees on two separate grounds. First, the court determined that PMC was entitled to attorney fees pursuant to the Ground Lease, section 10.3, which provides that "[i]n the event suit shall be brought . . . for the recovery of any rent due under the provisions of this lease . . . the prevailing party shall be paid a reasonable attorney's fee by the other party." Second, the district court determined that Idaho Code section 12-121 permitted an award of attorney fees because Quail Ridge "mounted an unreasonable defense in this case." To this end, the district court recognized that Quail Ridge's failure to comply with the district court's declaratory judgment to promptly pay rent "necessitated" the filing of a second action and additional motion practice.

Quail Ridge argues that the district court abused its discretion by awarding PMC attorney fees pursuant to Idaho Code section 12-121 because Quail Ridge "had a legitimate argument."

Quail Ridge also contends that the district court abused its discretion in determining the amount of fees because the district court failed to consider the factors in I.R.C.P. 54(e)(3).

The district court properly awarded attorney fees to PMC. Quail Ridge failed to provide any argument or authority on the district court's alternative basis for awarding fees, namely the fee provision in the Ground Lease. This Court has "consistently stated that if 'issues on appeal are not supported by propositions of law, authority, or argument, they will not be considered. . . . A party waives an issue cited on appeal if either authority or argument is lacking, not just if both are lacking.'" *Hurtado*, 153 Idaho at 17, 278 P.3d at 419 (quoting *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 16, 175 P.3d 172, 178 (2007) (alteration in original)). Without any argument or authority, Quail Ridge has waived this issue and effectively conceded a valid basis for the award of attorney fees. *See Fox v. Bd. of Cnty. Comm'rs*, 121 Idaho 684, 686, 827 P.2d 697, 699 (1992) (holding that if a trial court's award of attorney fees on three theories can be upheld on one theory only, the appellate court need not address the other alternative theories). Given Quail Ridge's failure to raise it on appeal, the district court's grant of fees pursuant to the fee provision in the Ground Lease is proper and provides an adequate and independent basis for the fee award, obviating the need for this Court to consider the fee issue any further. Therefore, the district court's award of attorney fees to PMC is affirmed.

Lastly, the district court awarded PMC $1,135.18 in discretionary costs for expenses incurred for computer-assisted legal research on Westlaw. The district court stated: "After reviewing [PMC's] memorandum and considering the arguments in opposition presented by [Quail Ridge], this Court has determined the research costs associated with this matter were a necessary and reasonable part of this case. This Court has also determined these were exceptional costs reasonably incurred." While awarded as a discretionary cost, this Court holds that the award is more properly made as a fee under Idaho Rule of Civil Procedure 54(e)(3)(K). Thus, this Court affirms the award, albeit as a fee and not a cost.

## C.   PMC is entitled to attorney fees and costs on appeal.

Both parties seek attorney fees on appeal. Quail Ridge contends that it is entitled to an award of fees pursuant to Idaho Code section 12-121 because PMC "brought a frivolous and unreasonable case against Quail Ridge and Preston because the breach of contract had already been litigated." PMC also seeks fees pursuant to the Ground Lease, section 10.3. Further, both parties submit that Idaho Code section 12-120(3) provides another basis to award attorney fees

14

on appeal, and neither party disputes that the Ground Lease constitutes a commercial transaction. Pursuant to Idaho Code section 12-120(3), "[i]n any civil action to recover . . . in any commercial transaction . . . the prevailing party shall be allowed a reasonable attorney's fee." I.C. § 12-120(3).

Quail Ridge is not the prevailing party and is therefore not entitled to an award of attorney fees on appeal. As the prevailing party, PMC is awarded attorney fees and costs on appeal pursuant to both Idaho Code section 12-120(3) and section 10.3 of the Ground Lease.

## V. CONCLUSION

The judgment in favor of PMC is affirmed. Attorney fees and costs on appeal are awarded to PMC.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.

15